## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gary E. Johnson; Gary Johnson 2012, Inc.; Libertarian National Committee; James P. Gray; Green Party of the United States; Jill Stein; Jill Stein for President; and Cheri Honkala, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:15-CV-01580-RMC |
| v. | ) ) | |
| Commission on Presidential Debates; Republican National Committee; Democratic National Committee; Frank J. Fahrenkopf, Jr.; Michael D. McCurry; Barack Obama; and Willard Mitt Romney, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS COMMISSION ON PRESIDENTIAL DEBATES, FRANK J. FAHRENKOPF, JR., AND MICHAEL D. MCCURRY'S MOTION TO DISMISS

Defendants Commission on Presidential Debates ("CPD"), Frank J. Fahrenkopf, Jr., and Michael D. McCurry hereby move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The grounds for this Motion, set forth more fully in the accompanying Memorandum of law, are as follows:

1.    Plaintiffs do not have Article III standing because their alleged injuries are entirely speculative and not the result of any of Defendants' actions, and the court cannot fashion any remedy that would provide redress for their alleged injuries.

2.    Plaintiffs also fail to establish antitrust standing because Plaintiffs have not suffered any antitrust injury; therefore their claims under §§ 1 and 2 of the Sherman Act must be dismissed.

3.      Plaintiffs fail to state a claim under the Sherman Act because, inter alia, the antitrust laws regulate commercial, rather than political, activities, and Plaintiffs' allegations concern political conduct.

4.      Plaintiffs fail to state a claim under the First Amendment to the Constitution of the United States because Defendants are not state actors, and there is no First Amendment right to participate in any particular presidential debate.

5.      Plaintiffs fail to state a claim for "intentional interference with prospective economic advantage and relations" because the Complaint does not identify any valid business relationships or expectancies to support their claims.

Therefore, for the reasons stated here and in Defendants' Memorandum in support of their Motion to Dismiss, Defendants request that the Court issue an Order dismissing Plaintiffs' Complaint in its entirety.

Dated:  January 8, 2016

Respectfully Submitted,

By:/s/Lewis K. Loss
Lewis K. Loss, Bar No. 375793
LLoss@ljwllp.com
Uzoma Nkwonta, Bar No. 975323
UNKwonta@ljwllp.com
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C.  20005
Telephone:  202.778.4060
Facsimile:  202.778.4099

*Attorneys for Defendants*
*Commission on Presidential Debates, Frank J.*
*Fahrenkopf, Jr., and Michael D. McCurry*

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gary E. Johnson; Gary Johnson 2012, Inc.; Libertarian National Committee; James P. Gray; Green Party of the United States; Jill Stein; Jill Stein for President; and Cheri Honkala, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:15-CV-01580-RMC |
| v. | ) ) | |
| Commission on Presidential Debates; Republican National Committee; Democratic National Committee; Frank J. Fahrenkopf, Jr.; Michael D. McCurry; Barack Obama; and Willard Mitt Romney, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS COMMISSION ON PRESIDENTIAL DEBATES, FRANK J. FAHRENKOPF, JR., AND MICHAEL D. MCCURRY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Lewis K. Loss
Uzoma N. Nkwonta
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099

*Attorneys for Defendants*
*Commission on Presidential Debates, Frank J.*
*Fahrenkopf, Jr., and Michael D. McCurry*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

SUMMARY OF LEGAL ARGUMENT ............................................................... 6

SUMMARY OF PLAINTIFFS' ALLEGATIONS ................................................ 9

A.    Alleged Violations of §§ 1 and 2 of the Sherman Act ................................ 10

B.    Alleged Restraints of Trade or Commerce ................................................. 12

C.    Remaining Claims ....................................................................................... 13

LEGAL STANDARD ......................................................................................... 14

ARGUMENT ...................................................................................................... 15

I.    PLAINTIFFS LACK  BOTH ARTICLE III AND ANTITRUST STANDING ............. 15

    A.    Plaintiffs do not have Article III standing ................................................. 15
    B.    Plaintiffs do not have antitrust standing .................................................... 19

II.   THE ANTITRUST LAWS DO NOT APPLY TO A DEBATE SPONSOR'S
    CANDIDATE SELECTION DECISIONS .................................................... 21

    A.    The antitrust laws do not apply to political activity .................................. 21

    B.    Plaintiffs would have this court trample the CPD's First Amendment rights ....... 24

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF § 1 OF THE
    SHERMAN ACT BECAUSE THEY ALLEGE A CONSPIRACY THAT IS
    IMPLAUSIBLE ON ITS FACE ..................................................................... 26

IV.   PLAINTIFFS' FEDERAL ANTITRUST CLAIMS SHOULD BE DISMISSED
    BECAUSE RESTRICTIONS ON CANDIDATE PARTICIPATION IN
    PRESIDENTIAL DEBATES ARE NOT PER SE VIOLATIONS OF § 1
    OF THE SHERMAN ACT, AND PLAINTIFFS FAIL TO IDENTIFY
    A LEGALLY COGNIZABLE MARKET TO STATE A CLAIM UNDER
    §2 OF THE SHERMAN ACT ....................................................................... 28

V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE
    FIRST AMENDMENT .................................................................................. 28

VI.   PLAINTIFFS HAVE NOT IDENTIFIED ANY SPECIFIC CONTRACTUAL
    OR ECONOMIC RELATIONSHIPS TO SUPPORT A CLAIM FOR
    INTENTIONAL INTERFERENCE ............................................................... 30

CONCLUSION ................................................................................................... 33

# TABLE OF AUTHORITIES

**Federal Cases**

*Adrian Wyllie for Governor Campaign v. Leadership Fla. Statewide Cmty. Found., Inc.,*
   2014 WL 5147758 (S.D. Fla. Oct. 14, 2014) ............................................................................... 1

*Am. W. Airlines, Inc. v. Burnley,*
   838 F.2d 1343 (D.C. Cir. 1988) ............................................................................... 15

*\*Ark. Educ. Television Comm'n v. Forbes,*
   523 U.S. 666 (1998) ............................................................................... 1, 3, 24, 29

*Arons v. Donovan,*
   882 F. Supp. 379 (D.N.J. 1995) ............................................................................... 1

*Asa Accugrade, Inc. v. Am. Numismatic Ass'n,*
   370 F. Supp. 2d 213 (D.D.C. 2005) ............................................................................... 20

*\*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................... 14

*Atl. Coast Airlines Holdings, Inc. v. Mesa Air Grp., Inc.,*
   295 F. Supp. 2d 75 (D.D.C. 2003) ............................................................................... 19

*Atl. Richfield Co. v. USA Petroleum Co.,*
   495 U.S. 328 (1990) ............................................................................... 19, 20

*Alta. Gas Chem., Ltd. V. E.I. Du Pont De nemours & Co.,*
   826 F.2d 1235 (3d Cir. 1987) ............................................................................... 20

*\*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................... 14, 26, 2, 31

*Bray v. Alexandria Women's Health Clinic,*
   506 U.S. 263 (1993) ............................................................................... 28

*\*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977) ............................................................................... 7, 19, 20, 21

*Buchanan v. Fed. Election Comm'n,*
   112 F. Supp. 2d 58 (D.D.C. 2000) ............................................................................... Passim

*Cargill, Inc. v. Monfort of Colo., Inc.,*
   479 U.S. 104 (1986) ............................................................................... 7

*City of Columbia v. Omni Outdoor Adver.,*
   499 U.S. 365 (1991) ............................................................................... 21

*City of Harper Woods Employees' Retirement Sys. v. Olver,*
   577 F. Supp. 2d 124 (D.D.C. 2008) ............................................................................... 14

*Command Consulting Group, LLC v. Neuraliq, Inc.,*
623 F. Supp. 2d 49 (D.D.C. 2009) ................................................................. 31, 32

*\*Council for Emp't & Econ. Energy Use v. WHDH Corp.,*
580 F.2d 9 (1st Cir. 1978) ...................................................................... 8, 22, 23

*Democratic Nat'l Comm. V. Republican Nat'l Comm.,*
673 F.3d 192 (3d Cir. 2012) ........................................................................... 28

*Drake v. Cox Commc'n, Inc.,*
2011 WL 2680688 (D. Kan. July 8, 2011) ...................................................... 23

*\*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ................................................................ 8, 22, 24, 25, 26

*Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am.,*
254 F.3d 173 (D.C. Cir. 2001) ....................................................................... 25

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ................................................................................ 15, 16

*\*Fulani v. Brady,*
729 F. Supp. 158 (D.D.C. 1990) .............................................................. Passim

*\*Fulani v. Brady,*
935 F.2d 1324 (D.C. Cir. 1991) (D.C. Cir. 1991) ..................................... Passim

*Gatt Commc'n, Inc. v. PMC Assocs., L.L.C.,*
711 F.3d 68 (2d Cir. 2013) ............................................................................ 19

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
185 F. Supp. 2d 9 (D.D.C. 2001) ............................................................. 14, 15

*Grocery Mfrs. Ass'n v. E.P.A.,*
693 F.3d 169 (D.C. Cir. 2012) ....................................................................... 15

*Guttenberg v. Emery,*
41 F. Supp. 3d 61 (D.D.C. 2014) .................................................................... 31

*Hagelin v. Fed. Election Comm'n,*
1996 WL 566762 (D.D.C. Oct. 1, 1996) ...................................................... 8, 28

*Hernandez v. D.C.,*
845 F. Supp. 2d 112 (D.D.C. 2012) ................................................................ 15

*\*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
515 U.S. 557 (1995) ................................................................................... 3, 24

*Jankovic v. Int'l Crisis Grp.,*
593 F.3d 22 (D.C. Cir. 2010) ......................................................................... 32

*Johnson v. F.C.C.,*
  829 F.2d 157 (D.C. Cir. 1987) ................................................................Passim

*Johnson v. Suffolk Univ.,*
  2002 WL 31426734 (D. Mass. Oct. 28, 2002) ........................................ 1

*La Botz v. Fed. Election Comm'n,*
  889 F. Supp. 2d 51 (D.D.C. 2012) .......................................................... 18

*Little v. KPMG LLP,*
  575 F.3d 533 (5th Cir. 2009).............................................................. 18, 19

*Livingston Downs Racing Assoc., Inc. v. Jefferson Downs Corp.,*
  192 F. Supp. 2d 519 (M.D. La. 2001) ................................................... 23

*Loren Data Corp. v. GXS, Inc.,*
  501 Fed. Appx. 275 (4th Cir. 2012) ...................................................... 27

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.,*
  140 F.3d 1228 (9th Cir. 1998)................................................................ 20

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................ 6, 15

*Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary,*
  432 F.2d 650 (D.C. 1970) ...................................................................... 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................... 27

*McCutcheon v. Fed. Election Comm'n,*
  --- U.S. ---, 134 S.Ct. 1434 (2014) ...................................................... 4, 25

*N.C. Right to Life, Inc. v. Leake,*
  525 F.3d 274 (4th Cir. 2008).................................................................. 26

Palmer v. Fox Broadcasting Corp., No. CIV. A.,
  2002 WL 31027440 (E.D. La. Jan. 15, 2002) ........................................ 1

*Perot v. Fed. Election Comm'n,*
  97 F.3d 553 (D.C. Cir. 1996) ........................................................... 4, 8, 24

*Public Citizen v. U.S. Dept. of Justice,*
  491 U.S. 440 (1989) ............................................................................... 26

*Riggs v. Home Builders,*
  203 F. Supp. 2d 1 (D.D.C. 2002) ........................................................... 33

*Robbins v. U.S. Dep't of Hous. & Urban Dev.,*
  72 F. Supp. 3d 1 (D.D.C. 2014) ............................................................. 16

*Rodgers v. F.T.C.*,
  492 F.2d 228 (9th Cir. 1974).................................................................... 23

*Schmidt v. U.S. Cap. Police Bd.*
  826 F. Supp. 2d 59 (D.D.C. 2011) ........................................................... 15

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
  483 U.S. 522 (1987) ................................................................................. 28

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ..................................................................................... 28

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*,
  59 F. Supp. 2d 27 (D.D.C. 1999) ............................................................. 31

*\*Sheppard v. Lee*,
  929 F.2d 496 (9th Cir. 1991)............................................................. 22, 23

*Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*,
  947 F. Supp. 2d 88 (D.D.C. 2013) ........................................................... 19

*Smith v. Am. Arbitration Ass'n, Inc.*,
  233 F.3d 502 (7th Cir. 2000).................................................................... 28

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  803 F.3d 1084 (9th Cir. 2015).................................................................. 27

*Terry v. Adams*,
  345 U.S. 461 (1953) .................................................................. 13, 14, 29, 30

*Xereas v. Heiss*,
  933 F. Supp. 2d 1 (D.D.C. 2013) ............................................................. 31

*Youkelsone v. FDIC*,
  910 F. Supp. 2d 213 (D.D.C. 2012), *aff'd* 560 Fed. Appx. 4 (D.C. Cir. 2014)........................ 15

## State Cases

*Carr v. Brown*,
  395 A.2d 79 (D.C. 1978)........................................................................... 32

*Johnson v. Comm'n on Presidential Debates*,
  No. 12-01600-FMO-AN (C.D. Cal. Apr. 3, 2013), ECF No. 37 ............... 11

## Federal Statutes

15 U.S.C. §1.......................................................................................... 10, 21

15 U.S.C. §2 .......................................................................................................... 10, 21

52 U.S.C. §30106(b)(1) ............................................................................................. 25

52 U.S.C. §30109(a)(1) ............................................................................................. 18

## Other Authorities

Corporate and Labor Organization Activity,
60 Fed. Reg. 64262 (Dec. 14, 1995) ...................................................................... 4, 25

Notice of Disposition of Petition for Rulemaking,
80 Fed. Reg. 72616 (Fed. Election Comm'n Nov. 20, 2015) ................................. 25, 26

Fed. R. Civ. P. (12)(b)(6) ........................................................................................ 9, 14

Fed. R. Civ. P. (12)(b)(1) ........................................................................................ 14, 16

2012 *Presidential Form 2 Filers*, Federal Election Commission,
http://www.fec.gov/press/resources/2012presidential_form2pty.shtml ........................................ 1

# INTRODUCTION

Over the years, televised candidate debates have been magnets for lawsuits brought by candidates with very modest public support who seek to litigate their way onto the debate stage with candidates who enjoy far greater public support. Those lawsuits have been brought against a wide array of debate sponsors,[1] and have advanced a potpourri of legal theories, including claims under the First Amendment,[2] the federal election laws,[3] the tax laws,[4] the federal communications laws,[5] various state statutes,[6] and the common law.[7] While such plaintiffs often cast themselves as guardians of the public interest, typically, as here, the plaintiffs urge that the law happens to require an approach to debate invitations that would result in their (but not all candidates') inclusion in the debates in question.[8] In connection with general election

---

[1] *See, e.g., Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) (suit against public broadcaster); *Johnson v. Suffolk Univ.*, No. Civ.A. 02-12603-PBS, 2002 WL 31426734 (D. Mass. Oct. 28, 2002) (suit against university that served as the venue for newspaper-sponsored debate); *Johnson v. F.C.C.*, 829 F.2d 157 (D.C. Cir. 1987) (suit challenging the League of Women Voters' criteria).

[2] *See, e.g., Forbes*, 523 U.S. at 672; *Johnson*, 829 F.2d at 159.

[3] *See, e.g., Buchanan v. Fed. Election Comm'n*, 112 F. Supp. 2d 58 (D.D.C. 2000) (challenging the Commission on Presidential Debates' sponsorship of debates under the Federal Election Campaign Act).

[4] *See, e.g., Fulani v. Brady*, 729 F. Supp. 158 (D.D.C. 1990) (challenging the Commission on Presidential Debates' tax-exempt status), *aff'd*, 935 F.2d 1324 (D.C. Cir. 1991).

[5] *See, e.g., Johnson*, 829 F.2d at 158 (alleging that exclusion from presidential debates violated the Communications Act); *Palmer v. Fox Broadcasting Corp.*, No. CIV. A. 02-0108, 2002 WL 31027440 (E.D. La. Jan. 15, 2002) (alleging exclusion of candidate from mayoral debate violated the Communications Act).

[6] *See, e.g., Arons v. Donovan*, 882 F. Supp. 379 (D.N.J. 1995) (alleging violation of New Jersey state statutes).

[7] *See, e.g., Adrian Wyllie for Governor Campaign v. Leadership Fla. Statewide Cmty. Found., Inc.*, No. 14-62322-CIV, 2014 WL 5147758 (S.D. Fla. Oct. 14, 2014) (alleging that exclusion from gubernatorial debate violated the doctrine of equitable estoppel under Florida law).

[8] In 2012, the year on which Plaintiffs focus in their Complaint, there were over 240 declared candidates for president, excluding those seeking the nomination of a major party. *See 2012 Presidential Form 2 Filers*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/press/resources/2012presidential form2pty. shtml (last visited Jan. 8, 2015). Here, Plaintiffs urge the court to issue an injunction requiring a sponsor of general election presidential debates to include any candidate who has obtained ballot access in a sufficient number of states to win an Electoral College majority. Compl. ¶ 13. Plaintiffs have chosen a standard that they could have met in 2012. *Id.* ¶ 82. Their proposed standard reveals little about the

presidential debates, different plaintiff-candidates have urged that different (but always self-serving) rules are required.[9]

None of those legal challenges has succeeded.  The courts and the federal agency most directly charged with regulating debate sponsorship, the Federal Election Commission ("FEC"), properly have resisted plaintiffs' efforts to compel general election debate sponsors to fashion their debates so they might serve as springboards for candidates with relatively little public support.  Defects in legal theories aside, the prior cases help place Plaintiffs' claims in this action in context.

First, plaintiffs in debate access cases, as here, are eager to describe their efforts as intended to advance the public's interest in robust debates, but the Supreme Court has punctured this overly simplistic formulation.  As noted, *supra* note 8, there typically are many declared candidates, particularly for the presidency.  It does not advance the public interest in robust debates for the law to be used as a blunt instrument to compel an overly-inclusive approach to

---

public's interest in or support of a candidate.  Since the Commission on Presidential Debates ("CPD") began sponsoring presidential debates in 1988, candidates with very modest support have obtained ballot access in a sufficient number of states to win an Electoral College majority including, for example: Lenora Fulani (1988 and 1992); Andre Marrou (1992); Harry Browne (1996 and 2000); John Hagelin (1996 and 2000); Howard Philips (1996 and 2000); Ron Paul (1998 and 2008); Michael Badnarik (2004); David Cobb (2004); Michael Peroutka (2004); Bob Barr (2008); Chuck Baldwin (2008); Cynthia McKinney (2008); and Virgil Goode (2012).  *See Election Results* (1998-2012). Fed. Election Comm'n, http://www.fec.gov/pubrec/electionresults.shtml (last visited Jan. 8, 2016).   None of these candidates obtained even 1 percent of the popular vote. *See id*.

[9] *See, e.g.*, Reform Party of the U.S., Compl. at 28-30, Fed. Election Comm'n Matter Under Review ("MUR") 4987 (2000) (seeking inclusion based on candidate qualification for public financing), *available at* http://eqs.fec.gov/eqsdocsMUR/000026F4.pdf; Open Debates, Compl. at 11-12, MUR 5414 (2004) (arguing that the CPD could have "defensibly" applied a 5% threshold or criteria based on polling that asked voters whom they would like to see participate in the debates), *available at* http://eqs.fec.gov/eqsdocsMUR/00002CFA.pdf; Sims, Compl. at 3, MUR 5530 (2005) (inviting all candidates who meet the constitutional eligibility and ballot access requirements), *available at* http://eqs.fec.gov/eqsdocsMUR/000043EC.pdf; Level the Playing Field, Compl. at 50, MUR 6869 (2015) (inviting the "third-party or independent candidate that gathered the most signatures" during the ballot access process as of April 30 of the election year), *available at* http://eqs.fec.gov/eqsdocs MUR/15044374389.pdf.

issuing debate invitations.  As the Supreme Court has explained, a debate sponsor "faced with the prospect of cacophony, on the one hand and . . . liability, on the other [if liable for not issuing a broader set of invitations to debate] might choose not to air candidates' views at all."  *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 681 (1998).  The Supreme Court further noted, "[o]n logistical grounds alone, a [debate sponsor] might, with reason, decide that the inclusion of all ballot-qualified candidates would actually undermine the educational value and quality of debates" and "a [g]overnment enforced right of access inescapably dampens the vigor and limits the variety of public debate."  *Id.* (internal quotations marks omitted).

Second, candidates for federal office are not required to debate.  As the D.C. Circuit properly has acknowledged, it is speculative at best to assume that the leading candidates would agree to share the stage with candidates who enjoy only scant public support.  *See Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991).  Thus, a sponsor of general election debates that aims to provide the electorate with a debate that includes the leading candidates faces a difficult task.  The sponsor needs to be inclusive enough to invite each candidate, *regardless of party affiliation*, whose level of public support genuinely qualifies him or her as a leading candidate.  At the same time, the sponsor should not take an approach that is so inclusive that invitations to candidates with scant public support lead the candidates in whom the public has the greatest interest to refuse to debate.  No court has found that the law dictates how debate sponsors should strike this difficult balance.

Third, debate sponsors such as the private, not-for profit, Commission on Presidential Debates ("CPD"), have a protected First Amendment interest in their decisions whether and how to sponsor a candidate debate.  *See, e.g., Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 575 (1995) (holding that a parade organizer's choice not to include a

particular group is protected by the First Amendment and "presumed to lie beyond the government's power to control.")  As the D.C. Circuit explained in a case involving the CPD, "if this court were to enjoin the CPD from staging the debates or from choosing debate participants, there would be a substantial argument that the court would itself violate the CPD's First Amendment rights."  *Perot v. Fed. Election Comm'n*, 97 F.3d 553, 559 (D.C. Cir. 1996).

Fourth, in regulating political activity, Congress traditionally exercises extreme caution not to derogate First Amendment interests, and courts, in turn, exercise similar caution when interpreting such legislation.  The Supreme Court has warned that "[n]o matter how desirable it may seem, it is not an acceptable government objective to level the playing field or to level electoral opportunities . . . ."  *McCutcheon v. Fed. Election Comm'n*, --- U.S. ---, 134 S.Ct. 1434, 1450 (2014) (internal quotation marks omitted).

Fifth, the FEC, the agency most directly charged with regulating debates between or among candidates for federal office, recognizing the First Amendment interests implicated in regulating the political process, deliberately has not dictated to debate sponsors what candidate selection criteria they must employ.  Under the FEC's regulations, "broad discretion" is afforded to debate sponsors "in determining the criteria for participant selection."  Reform Party of U.S.A., First Gen. Counsel's Report, at 16, MUR 4987 (2000) (citing 60 Fed. Reg. 64,262 (Dec. 14, 1995)) *available at* http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf. The FEC has stated that "[t]he choice of which objective criteria to use is largely left to the discretion of the staging organization."  Corporate and Labor Organization Activity, 60 Fed. Reg. 64,262 (Dec. 14, 1995) (to be codified at 11 C.F.R. pt. 100, 102, 109, 110, and 114), *available at* 1995 WL 735941.

Sixth, the FEC and the courts have considered and rejected numerous complaints filed by various third party candidates against the CPD attacking the very candidate selection criteria

Plaintiffs complain of herein.  The CPD's candidate selection criteria utilized in 2012 can be summarized as follows: (1) satisfaction of the eligibility requirements to hold the Office of President of the United States, as set forth in Article II, Section 1 of the Constitution, (2) qualification to appear on enough state ballots to have at least a mathematical chance of securing an Electoral College majority, and (3) a level of support of at least 15 percent of the national electorate as determined by five selected national public opinion polling organizations, using the average of those organizations' most recent publicly-reported results at the time of the determination.  Compl. ¶ 74.  Plaintiffs' attack herein is limited to the third criterion.   Each prior attack on the CPD's criteria has been rejected and those criteria repeatedly have been found to be reasonable and lawful.[10]   Indeed, the FEC very recently rejected these very Plaintiffs' attack on the CPD's 15 percent criterion finding that the criterion was reasonable and specifically rejecting Plaintiffs' allegations that the major parties monopolized the debates to limit participation to their two candidates.  *See* Green Party of U.S., First Gen. Counsel's Report, MUR 6942 (2015), *available at* http://eqs.fec.gov/eqsdocsMUR/15044384444.pdf.

---

[10]  *See, e.g.,* Level the Playing Field, First Gen. Counsel's Report, MUR 6869 (2015) (rejecting petitioner's challenge to the 15 percent threshold in the CPD's candidate selection criteria), *available at* http://eqs.fec.gov/eqsdocsMUR/15044375502.pdf.; Sims, First Gen. Counsel's Report, MUR 5530 (2005) (same), *available at* http://eqs.fec.gov/eqsdocsMUR/000043F0.pdf; Farah, First Gen. Counsel's Report, MUR 5414 (2004) (finding that "the Memoranda of Understanding [between invited candidates] . . . do not provide any specific or credible evidence that the major parties played a controlling role in excluding debate participants or that the CPD acted upon their instructions"), *available at* http://eqs.fec.gov/eqsdocsMUR/00002D01.pdf; Hagelin, First Gen. Counsel's Report, MUR 5378 (2004) (finding no grounds to support allegation that the CPD intentionally provided benefits to Republican and Democratic candidates), *available at* http://eqs.fec.gov/eqsdocsMUR/000012D0.pdf, *aff'd, Hagelin v. Fed. Election Comm'n*, 411 F.3d 237 (D.C. Cir. 2005); Englerius, First Gen. Counsel's Report, MUR 5207 (2002) ("CPD's criteria for participation in candidate debates appear to be pre-established, objective . . . and not designed to result in the selection of certain pre-chosen participants."), *available at* http://eqs.fec.gov/eqsdocsMUR/000000AF.pdf; Reform Party of U.S., First Gen. Counsel's Report, MUR 4987 (2000) (finding no evidence that "the DNC and the RNC had input into the development of the CPD's candidate selection criteria. . . ." and noting that "the CPD's [current] candidate selection criteria . . . appear[s] to be even more objective than its [previous] 1996 criteria."), *available at* http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf, *aff'd, Buchanan*, 112 F. Supp. 2d at 75 ("It is difficult to understand why it would be unreasonable or subjective to consider the extent of a candidate's electoral support prior to the debate . . . .").

## SUMMARY OF LEGAL ARGUMENT

Undoubtedly aware of this mountain of reason, precedent, and other authority, Plaintiffs strain to cast CPD's effort to sponsor debates between or among the leading candidates for the presidency as a violation of the antitrust laws, a novel but deeply flawed theory. They also advance already-rejected claims under the First Amendment and a common law intentional interference claim. As explained in greater detail in the following pages, the fatal defects in Plaintiffs' claims include (but are not limited to) the following.

**<u>No Article III Standing</u>**. Plaintiffs do not have Article III standing to pursue their claims. Article III standing requires, *inter alia*, that Plaintiffs suffer a personal injury that is fairly traceable to Defendants' allegedly unlawful conduct and that the injury is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs contend they were injured because they were not able to participate in the televised general election debates in 2012 between Barack Obama and Mitt Romney and that "[t]o be excluded from the debates is an 'electoral death sentence.'" Compl. ¶ 46. Plaintiffs complain that the 'media gives non-duopoly non-major party candidates little or no coverage, and they cannot afford significant, if any, advertising." *Id*. But Plaintiffs conflate cause and effect. An invitation decision that is based on a straightforward measurement of a candidate's level of popular support in the final weeks of a very long campaign should not be confused with the many factors that account for that candidate's level of support (or lack of support) at the time that decision is made. That is, the debate invitation decision did not cause Plaintiffs to enjoy far lower levels of support than the invited candidates, the decision simply reflected that pre-existing condition. It is purely speculative to imagine a scenario in which, *but for* the alleged unlawful debate invitation decisions by CPD, some other debate sponsor would have invited Plaintiffs to

participate in a debate with the leading candidates, *and* the leading candidates, who are under no obligation to debate, would actually have agreed to participate in that debate, *and* that debate would be covered by the media in a manner that garners the attention Plaintiffs seek.   Plaintiffs' injury here is speculative and they can show neither causation nor redressability.   As such, their claims do not meet the constitutional standing requirements and their lawsuit must be dismissed for that reason alone.

**No Antitrust Standing**.   Plaintiffs have not suffered any *antitrust* injury and, thus, cannot demonstrate antitrust standing to support their claim for relief under the federal antitrust laws.   *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110-11 (1986).   Their Complaint only alleges harm to their campaigns and political aspirations caused by the fact that they were not invited to participate in the CPD-sponsored debates; it does not explain how any market has been affected by the CPD's or any other defendant's alleged conduct.   Because the antitrust laws protect competition, and not competitors, Plaintiffs' alleged individual injuries are insufficient to state a claim for relief.   Further, Plaintiffs cannot demonstrate an antitrust injury if they would have suffered the same injury even without an antitrust violation.   As noted, the CPD's candidate selection criteria are lawful and have been upheld as such numerous times by the FEC and the courts.   *See supra* note 10.   The CPD's criteria are also virtually identical to the criteria employed by the League of Women Voters ("LWV") before the CPD was even formed.   *See* League of Women Voters Educ. Fund, Resp. at 6 ("LWV Resp."), MUR 1287 (1980), *available at* http://www.fec.gov/disclosure_data/mur/1287.pdf (attached as Ex. A to Defs.' Req. for Judicial Notice); *see also Buchanan*, 112 F. Supp. 2d at 74.   Because a non-conspiring sponsor could have applied the same criteria and Plaintiffs would have suffered the same "injury" without any "unlawful agreement," they cannot demonstrate antitrust injury.   *See Brunswick*

*Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (holding that antitrust plaintiff's injury must "flow[] from that which makes defendants' acts unlawful.")  Their antitrust claims must be dismissed for this reason as well.

**The Antitrust Laws Do Not Apply in the Political Arena**.  Plaintiffs' allegations involve political disputes that are simply beyond the scope of the Sherman Act.  It is well-settled that the antitrust laws only regulate commercial activity.  *See, e.g. E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961) ("[The Act] condemns trade restraints, not political activity . . . .")  However, this case involves the process of running for political office and candidates' efforts to influence the electorate. While Plaintiffs refer to several purported markets that may have some tangential connection to presidential election campaigns, at bottom "[t]his case involves political opponents, not commercial competitors; and political objectives, not market place goals."  *See Council for Emp't & Econ. Energy Use v. WHDH Corp.*, 580 F.2d 9, 12 (1st Cir. 1978).  The antitrust laws have no place in this dispute.[11]

**No State Actor and No First Amendment Right to Be in Debate**.  Plaintiffs' First Amendment claim fails as a matter of law.  As a number of federal courts have held, neither the CPD nor any other defendant is a state actor and Plaintiffs do not contend otherwise.  *See, e.g., Hagelin v. Fed. Election Comm'n*, No. 96-2132, 1996 WL 566762, at *6, 9 (D.D.C. Oct. 1, 1996), *aff'd sub nom. Perot v. Fed. Election Comm'n*, 97 F.3d 553 (D.C. Cir. 1996).[12] Moreover, the case law is clear that there is no First Amendment right to participate in a particular debate.  *See Johnson v. F.C.C.*, 829 F.2d 157, 162 (D.C. Cir. 1987).

---

[11] Plaintiffs fail to state a claim under the Sherman and Clayton Acts for the additional reasons discussed in Section III.C.1 of the DNC and Barack Obama's Statement of Points and Authorities, which the CPD, Fahrenkopf, and McCurry join and incorporate here as well.

[12] The plaintiffs in *Hagelin* did not appeal the dismissal of their First Amendment claim.

**Failure to Plead Adequately a Claim for Tortious Interference**.  Finally, Plaintiffs have not identified a single business relationship or expectancy to support their claim for interference with economic relations.  Like many of their other allegations, Plaintiffs' reliance on vague references and labels is insufficient to state a claim for relief.

In sum, this case is about political candidates who seek greater access to the electorate to promote their views and improve their chances of electoral success.  Their dispute is not one over legally protected economic competition, nor does it involve any constitutional rights or any economic relationship with which CPD has interfered.  Plaintiffs' claims have no legal merit and should be dismissed.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS[13]

Plaintiffs in this action consist of 2012 presidential candidates, Gary Johnson and Jill Stein; their campaigns (Gary Johnson 2012, Inc. and Jill Stein for President); their respective running mates (James P. Gray and Cheri Honkala); and their respective political parties (the Libertarian National Committee and the Green Party of the United States).  Plaintiff Stein qualified for federal matching funds, Compl. ¶ 83, and Plaintiffs Johnson and Stein attained ballot access in sufficient states to win a theoretical Electoral College majority, Compl. ¶ 82.

The Complaint names as defendants: the CPD, the Republican National Committee ("RNC"), the Democratic National Committee ("DNC"), Frank J. Fahrenkopf, Jr., Michael D. McCurry, Barack Obama, and Willard Mitt Romney.  The CPD is a nonprofit 501(c)(3) corporation that has sponsored presidential debates in each presidential election since

---

[13] For purposes only of this motion, as required under Fed. R. Civ. P 12(b), CPD, Fahrenkopf and McCurry take the allegations of the Complaint as true.  The fundamental factual premise of the Complaint, however, is not true as the CPD is a wholly independent entity, and does not act in concert with any political party or candidate.  It is beyond any reasonable challenge that the CPD makes its candidate selection decisions based on widely publicized and wholly transparent candidate selection criteria announced well in advance of the debates.  It is also beyond dispute that the FEC and the Courts have found those criteria to comply with federal election law.  *See supra* note 10.

1988.  Compl. ¶ 24.  The RNC and DNC are national political committees of the Republican and Democratic Parties, respectively.  *Id.* ¶¶ 25-26.  Frank J. Fahrenkopf, Jr. and Michael D. McCurry are the current co-chairmen of the CPD.  *Id.* ¶¶ 27-28.  Barack Obama was the Democratic Party nominee for president in the 2008 and 2012 presidential elections.  *Id.* ¶ 29.  President Obama participated in the CPD-sponsored presidential debates in 2012.  *Id.*  Willard Mitt Romney was the Republican Party nominee for president in 2012, and Romney also participated in the CPD-sponsored presidential debates during the 2012 presidential election.  *Id.* ¶ 30.

The Complaint alleges that the CPD "follows the dictates of the RNC and DNC," which allegedly instructed the CPD to exclude from presidential and vice-presidential debates "participants other than those chosen and approved by the RNC, DNC, and the Republican and Democratic presidential candidates."  *Id.* ¶¶ 24-25.  The Complaint alleges that President Obama and Mitt Romney "entered into collusive agreements" to sustain the CPD's alleged monopoly and to exclude all other candidates from participating in the presidential debates.  *Id.* ¶¶ 29-30.

### A.    Alleged Violations of §§ 1 and 2 of the Sherman Act

The Complaint asserts that Defendants committed a per se illegal continuing horizontal boycott of Plaintiffs in violation of § 1 of the Sherman Act, and conspired to monopolize the "presidential debates," "presidential elections," and "electoral politics" markets in violation of § 2 of the Sherman Act.  *Id*. ¶¶ 8-11.

In support of their § 1 claim, Plaintiffs allege that the CPD, the Republican National Committee, the Democratic National Committee, Frank Fahrenkopf, Michael McCurry, Barack Obama, and Mitt Romney all conspired to exclude Plaintiffs and all other non-major party

candidates from the CPD-sponsored presidential and vice presidential debates. *See, e.g.* Compl. ¶ 89.

Plaintiffs' claims all turn on the standard the CPD applied in making its decisions regarding to whom it would issue invitations to debate. Plaintiffs have acknowledged, as they must, that those decisions were based on the CPD's Candidate Selection Criteria for 2012 General Election Debates, and that the CPD announced the criteria earlier in the year, before the 2012 presidential debates. *See* Compl. ¶ 74; *see also* First Am. Compl. ¶¶ 16-17, *Johnson v. Comm'n on Presidential Debates*, No. 12-01600-FMO-AN (C.D. Cal. Apr. 3, 2013), ECF No. 37. Those criteria are as follows:

1. <u>EVIDENCE OF CONSTITUTIONAL ELIGIBILITY</u>

The Commission's first criterion requires satisfaction of the eligibility requirements of Article II, Section 1 of the Constitution. The requirements are satisfied if the candidate:

   a.   is at least 35 years of age;

   b. is a natural born citizen of the United States and a resident of the United States for fourteen years; and

   c. is otherwise eligible under the Constitution.

2. <u>EVIDENCE OF BALLOT ACCESS</u>

The Commission's second criterion requires that the candidate qualify to have his/her name appear on enough state ballots to have at least a mathematical chance of securing an Electoral College majority in the 2012 general election. Under the Constitution, the candidate who receives a majority of votes in the Electoral College, at least 270 votes, is elected President regardless of the popular vote.

3. <u>INDICATORS OF ELECTORAL SUPPORT</u>

The Commission's third criterion requires that the candidate have a level of support of at least 15% (fifteen percent) of the national electorate as determined by five selected national public opinion polling organizations, using the average of those organizations' most recent publicly-reported results at the time of the determination.

Compl. ¶ 74. According to Plaintiffs, presidential and vice-presidential debates are "essential facilities" for any presidential or vice-presidential candidate to "meaningfully compete" in the election and to communicate his or her message to the American public in a way that may influence policies. *Id.* ¶ 45. Plaintiffs also allege that access to the debates is an essential facility to fund-raising, media exposure, ability to attract volunteers, name recognition, voter support, philosophical or ideological branding, popular credibility and goodwill necessary to conduct a meaningful campaign. *Id.* Thus, in Plaintiffs' terms, exclusion from the debates is "an electoral death sentence" because the "media gives non-major party candidates little or no coverage, and they cannot afford significant, if any, national advertising. *Id.* ¶ 46. Plaintiffs further allege that "[t]here are no alternative means for presidential and vice-presidential candidates to acquaint themselves to the American public that even approaches the exposure provided by the presidential debates." *Id.* ¶ 47.

In support of their § 2 claim, Plaintiffs allege that the RNC and DNC monopolized the presidential debates market, and that the RNC, DNC, and the CPD "engaged in competitively unreasonable practices that have created a dangerous probability of monopolizing . . . the presidential debates market." *Id.* ¶¶ 94-95.

### B.   Alleged Restraints of Trade or Commerce.

Plaintiffs allege that the "publicity and exposure to the general public" provided to candidates participating in the debates has a "monetary value of hundreds of millions of dollars." *Id.* ¶ 34. Among the examples of "commerce" that Plaintiffs cite include: corporate sponsorship of the debates, *id.* ¶ 35; revenue generated for the host communities and universities, *id.* ¶ 37; and production fees paid by the hosts of presidential debates to the CPD, *id.* ¶ 38. Plaintiffs further allege that "[c]ommerce in the presidential elections, presidential candidates, presidential

campaign and electoral politics markets includes the intra-party and inter-party electoral competitions for national office, which are largely and artificially limited to duopoly parties under a 'two party system.'" *Id.* ¶ 42.

### C. Remaining Claims.

The Complaint also alleges a violation of First Amendment rights of free speech and association, and asserts a common law claim for intentional interference with prospective economic advantage and relations ("intentional interference").  In support of their First Amendment claim, Plaintiffs allege that the First Amendment should apply because the presidential debates "exert a *de facto* influence on the outcome of presidential elections comparable to the influence of the Jaybird Party[] . . ." in *Terry v. Adams*, 345 U.S. 461 (1953), *Id.* ¶ 110, and that "[t]he supreme political significance of presidential elections justifies a unique constitutional jurisprudence." *Id.* ¶ 117.  Notably, Plaintiffs do not allege that the CPD or any of the Defendants are state actors, nor do they allege that the debates involved any government action.

For their intentional interference claim, Plaintiffs allege that they "had legitimate expectations of economic relationships with third parties, including presidential debate organizers and sponsors, contributors, and media outlets." *Id.* ¶ 135.  They further allege that "prospective relationships would have provided economic and other benefits . . . ," *id.* ¶ 136, yet beyond these labels, Plaintiffs do not identify any specific business or economic relationships with which Defendants allegedly interfered.

Plaintiffs seek damages and other relief, including an injunction against any barrier or agreement that would result "in the exclusion from the presidential debates of presidential

candidates who have obtained ballot access in a sufficient number of states to win an electoral college majority," *id.* ¶ 13, and an order compelling the dissolution of the [CPD]," *id.* ¶ 141.

## LEGAL STANDARD

Upon a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint cannot survive dismissal unless it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Although a court must accept as true all factual allegations in the Complaint and must draw all reasonable inferences in favor of the plaintiff, the Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a plausible claim. *Id.* Rather, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant[s] are liable for the misconduct alleged." *Id.* Plaintiffs' burden at the motion-to-dismiss stage cannot be met by mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plausible claim requires "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court "must retain the power to insist upon some specificity in the pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558.

Furthermore, Plaintiffs bear the burden of establishing the court's jurisdiction. *City of Harper Woods Employees' Retirement Sys. v. Olver*, 577 F. Supp. 2d 124, 128 (D.D.C. 2008). "A motion to dismiss for lack of standing is treated as a challenge to subject matter jurisdiction" pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.* Such a motion "imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14

(D.D.C. 2001).   The court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Schmidt v. U.S. Cap. Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011).

A court ruling on a motion to dismiss may consider "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the court may take judicial notice." *Hernandez v. D.C.*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012).   The court "may take judicial notice of public records from other proceedings . . . historical, political, or statistical facts, or any other facts that are verifiable with certainty." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012) (internal citations omitted), *aff'd*, 560 Fed. Appx. 4 (D.C. Cir. 2014).

## ARGUMENT

### I.   PLAINTIFFS LACK  BOTH ARTICLE III AND ANTITRUST STANDING

### A.   Plaintiffs do not have Article III standing.

Article III standing is a prerequisite to federal courts' consideration of the merits of any action.  In order to demonstrate Article III standing, Plaintiffs must allege: (1) an "injury in fact," (2) "that the injury is 'fairly traceable' to the challenged action of the defendant," and (3) that the injury is redressable.  *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 174 (D.C. Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These standards apply equally to antitrust plaintiffs.  *See, e.g., Am. W. Airlines, Inc. v. Burnley*, 838 F.2d 1343, 1344 (D.C. Cir. 1988).

A plaintiff establishes an injury-in-fact, for Article III purposes, when he has suffered an injury that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

180 (2000).  The causation or traceability prong requires the plaintiff to establish that the alleged injury was caused by the defendants' acts, and not some absent third party; thus, "[t]he presence . . . of third-party links in [a] causal chain [can] independently corroborate that [a party's] claim of causation is 'entirely speculative' and insufficient for standing." *Robbins v. U.S. Dep't of Hous. & Urban Dev.*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014) (quoting *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996)).  Further, to satisfy the redressability requirement, Plaintiffs must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 181.

Plaintiffs' allege harm solely in the form of lost opportunities that they believe would have accrued had they participated in the presidential debates with the leading candidates, including media exposure, popular credibility, opportunities for fund-raising, voter support, and goodwill.  *See, e.g.,* Compl. ¶ 98.  Because Plaintiffs cannot establish article III standing, all of their claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

This Court (Judge Revercomb) and the D.C. Circuit, have previously held that these allegations cannot establish Article III standing.  In 1990, New Alliance Party presidential candidate Lenora Fulani brought suit in this court challenging her exclusion from the 1988 general election debates sponsored by the CPD between George H.W. Bush and Michael Dukakis.  *See Fulani*, 729 F. Supp. 158 (D.D.C. 1990), *aff'd,* 935 F.2d 1324 (D.C. Cir. 1991).  As here, Fulani defined her injury as the loss of media exposure and voter recognition and support.  *See id.* at 162.  In a decision later affirmed by the D.C. Circuit, Judge Revercomb of this court closely analyzed candidate Fulani's claimed injury and found her to lack Article III standing.  *See id.* at 165.

Judge Revercomb opened his discussion by noting that "[a]s a general proposition this Court does not disagree that media exposure is of considerable value to a candidate, but merely stating the obvious does not substitute for analysis of the injury requirement in Article III standing." *Id.* at 162.  In a passage equally applicable here, Judge Revercomb explained "this Court cannot reasonably infer that the debates [between George H.W. Bush and Michael Dukakis] themselves provided the participants with a competitive advantage over nonparticipants, *i.e.*, Fulani, by the mere fact that the 1988 debates were media events." *Id.*  As is true here, the plaintiffs in Fulani sought to conflate cause and effect.  "[T]he very reason why the major party candidates were invited to participate in the debates was because, as conceded by Fulani, they already had a realistic chance of winning the election and already had a competitive advantage over  Fulani—and other fringe party candidates—in terms of media exposure and public recognition." *Id.*

Fulani posited, as Plaintiffs do here, that she would have received media coverage and public recognition had she been included in the debates.  *Id.* at 163.   Judge Revercomb considered this claim and concluded that "[t]his Court has no way of determining what the real injury to Fulani is based on her exclusion from the debates because the media coverage is dependent upon a number of diverse factors involving the structure and quality of the debates, including the number of candidates participating and the stature of those participating." *Id.*  The leading candidates are under no obligation to share the debate stage with candidates enjoying only modest public support, which cast great doubt on Fulani's premise that there would be a debate in which she and the leading candidates would participate.  *Id.* ("Indeed, if such a debate were staged, this Court maintains serious doubt whether major party candidates—who presumably would be the media draw in the first place—would participate.")  The *Fulani* Court

concluded that she had not identified a palpable and non-speculative injury for standing purposes. *Id.* at 163. For largely the same reasons, the district court in *Fulani* concluded that she could neither demonstrate that her alleged injury was caused by the CPD's sponsorship of the debates in 1988 nor would be cured by an order disqualifying CPD from sponsoring debates. *Id.* at 164-65.

The D.C. Circuit affirmed. *See Fulani*, 935 F.2d 1324. While the D.C. Circuit opinion placed primary emphasis on the special standing problems attendant to a challenge to the tax status of another, the D.C. Circuit did not reject any of Judge Revercomb's reasoning and expressly noted that even if a debate sponsor were to invite Fulani, in that case "the two major-party candidates might decline to participate in debates that do not present them as the two salient candidates, thus depriving the debates of the media appeal Fulani seeks." *Id.* at 1329.[14]

The popular credibility, voter support and other benefits of which Plaintiffs claim to have been deprived would require the court to pile inference upon inference about the actions of third parties, including potential debate sponsors, the media, and other candidates who may or may not have chosen to participate in debates with Plaintiffs. As in *Fulani*, Plaintiffs' claims are entirely speculative and too hypothetical to support Article III standing. *See also Little v. KPMG LLP*,

---

[14] In *Buchanan v. Federal Election Commission*, 112 F. Supp.2d 58, the court found that Reform Party presidential candidate Patrick Buchanan had standing to sue the FEC to obtain judicial review of the FEC's dismissal of his administrative complaint challenging the CPD's candidate selection criteria. *See also La Botz v. Fed. Election Comm'n*, 889 F. Supp. 2d 51, 56 (D.D.C. 2012) (challenging FEC's dismissal of administrative complaint alleging that exclusion from televised debate violated the Federal Election Campaign Act). This result is unsurprising given that the Federal Election Campaign Act ("FECA") expressly authorizes "any person who believes a violation of this Act … has occurred . . ." to file a complaint with the FEC, 52 U.S.C. § 30109(a)(1), and allows [a]ny party aggrieved by an [FEC] order . . ." to seek judicial review, *id*. § 30109(a)(8)(A). As the court in *Buchanan* acknowledged, the Supreme Court has recognized that the language in the FECA provisions authorizing suit by an "aggrieved party" is consistent with a "congressional intent to cast the standing net broadly—beyond the common-law interest and substantive statutory rights upon which prudential standing traditionally rested." 112 F. Supp.2d at 64-65 (quoting *FEC v. Atkins*, 524 U.S. 11, 19 (1998)); *see also La Botz*, 889 F. Supp. 2d at 56 ("If [La Botz's] exclusion violated the FECA, this injury suffices for the purposes of Article III.") (citing *Buchanan*, 112 F. Supp. 2d at 68).

575 F.3d 533, 540-41 (5th Cir. 2009) (holding that competitors' alleged lost-business injury "depends on several layers of decisions by third parties . . . and is too speculative to confer Article III standing.")

**B.      Plaintiffs do not have antitrust standing.**

Antitrust standing is a threshold, pleading-stage inquiry, which requires, at minimum, a showing of antitrust injury.  *See Gatt Commc'n, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013).  "[W]hen a complaint . . . fails to establish this requirement [the court] must dismiss it as a matter of law."  *Id.*  Because Plaintiffs do not assert any antitrust injury, their antitrust claims should be dismissed as a matter of law.  *Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 947 F. Supp. 2d 88, 105 (D.D.C. 2013) ("This additional requirement of 'antitrust injury' exists where a plaintiff seeks treble damages pursuant to Section 4 of the Clayton Act, as well as . . . injunctive relief under Section 16.")

The Supreme Court has defined antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant['s] acts unlawful." *Atl. Coast Airlines Holdings, Inc. v. Mesa Air Grp., Inc.*, 295 F. Supp. 2d 75, 88 (D.D.C. 2003) (quoting *Brunswick Corp.*, 429 U.S. at 489).  "The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation."  *Id.* This ensures "a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

Plaintiffs' alleged injuries in this matter are focused entirely on lost opportunities specific to Johnson's and Stein's candidacy.  The candidates complain of lost opportunities to gain public exposure, popular recognition, and legitimacy; the lost income that they would have earned as President of the United States, and so on. *See, e.g.*, Compl. ¶¶ 89-92.  But the antitrust laws were

enacted to protect competition, not competitors; thus, Plaintiffs' individualized grievances are not the types of injuries that the antitrust laws were intended to prevent. *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 215 (D.D.C. 2005). Plaintiffs' only other allegations of market-based harm consist of vague references to "undermining competition" in the presidential debates, electoral politics, or presidential campaign markets, but this, too, is insufficient to establish antitrust injury. *See Atl. Richfield Co.*, 495 U.S. at 339 n.8 ("The antitrust injury requirement cannot be met by broad allegations of harm to the 'market' as an abstract entity."); *Asa Accugrade, Inc.,* 370 F. Supp. 2d at 216 (holding that failure to allege facts beyond conclusory statement establishing that the "market as a whole suffered anti-competitive injury" is fatal to Sherman Act claims).

Moreover, Plaintiffs cannot demonstrate antitrust standing if they would have suffered the same injury even without the alleged antitrust violation. *See* Brunswick, 429 U.S. at 487 (noting that acquisitions that "brought a 'deep pocket' parent into a market of 'pygmies'" did not cause plaintiffs any antitrust injury because they "would have suffered the identical 'loss' . . . had the acquired centers . . . been purchased by 'shallow pocket' parents . . . ."); *see also Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1233 (9th Cir. 1998) (holding that competitor's gain in market share through acquisition of manufacturing and distribution rights did not result in antitrust injury because plaintiff would have suffered the same injury if a small business acquired the distribution rights); *Alta. Gas Chem., Ltd. v. E.I. Du Pont De nemours & Co.*, 826 F.2d 1235, 1241 (3d Cir. 1987) (holding that methanol producer did not assert antitrust injury from merger of competitor and subsequent curtailment of production because "the same harm would have occurred had any acquirer decided to curtail competitor's production" thus injuries did not result from market power).

Here, Plaintiffs' claimed injury, at bottom, flows from their failure to meet the CPD's candidate selection criteria. However, the CPD's criteria are themselves lawful and have been upheld numerous times by the FEC and federal courts since first employed by the CPD in 2000. *See supra* note 10. Plaintiffs claim that Defendants conspired to exclude third-party candidates, but if any non-conspiring debate sponsor could have lawfully applied the same criteria—as the LWV did in 1980—then Plaintiffs would have suffered the same injury at the hands of an ostensibly "independent" debate sponsor, without any unlawful agreement. Therefore, Plaintiffs' alleged injuries do not "flow from that which makes [D]efendants' acts unlawful" or "by reason of anything forbidden in the antitrust laws." *Id.* at 488-89. Plaintiffs cannot demonstrate antitrust injury under the rule set forth in *Brunswick* and their antitrust claims should be dismissed.

## II.   THE ANTITRUST LAWS DO NOT APPLY TO A DEBATE SPONSOR'S CANDIDATE SELECTION DECISIONS

### A.      The antitrust laws do not apply to political activity.

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits, in part, "[e]very contract, combination . . . or conspiracy, *in restraint of trade or commerce* among the several States . . . ." (emphasis added). Section 2, 15 U.S.C. § 2, subjects to criminal penalty "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire . . . to monopolize *any part of the trade or commerce* among the several States . . . ." (emphasis added). As is plain from the statutory language itself, the Sherman Act only prohibits restraints of trade or commerce and does not extend to political activities. *See City of Columbia v. Omni Outdoor Adver.*, 499 U.S. 365, 383 (1991) ("[A]ntitrust laws regulate business, not politics . . . .")

Plaintiffs' allegations are grounded, not in commerce, but in the competition among candidates for elected office. They allege that their exclusion from the presidential debates

denies them an essential facility to being elected to the office of President of the United States, *e.g.* Compl. ¶ 45, yet this claim distorts the Sherman Act's clear focus on commerce.

The Supreme Court has unequivocally rejected attempts to "impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of the Act." *Noerr*, 365 U.S. at 137 (holding that the Sherman Act does not apply to "associations for the purpose of influencing the passage or enforcement of laws" or the solicitation of government action). A number of federal courts have followed suit, rejecting attempts to shoehorn antitrust theories into the realm of politics. *See Sheppard v. Lee*, 929 F.2d 496 (9th Cir. 1991).

In *Sheppard*, the Ninth Circuit dismissed a lawsuit in which the plaintiff alleged that the defendants violated the Sherman Act by firing him in order to maintain their political offices. 929 F.2d at 497-98. Plaintiff alleged that his claim involved commercial activity because the elected position that he sought (County Supervisor) was a paid position. *See id.* at 499. In rejecting this argument, the Ninth Circuit held that "the antitrust laws pose no barriers to the suppression of competition for the holding of any particular office or position, elected or otherwise . . . limiting the opportunity to hold a political office is no more a violation of the antitrust laws than is conducting the government in a non-competitive manner." *Id.* at 499-500.

Similarly, the First Circuit upheld the dismissal of an antitrust claim against a group of broadcasters that allegedly conspired to provide free air time to the plaintiff's political opponent. *See WHDH Corp.*, 580 F.2d 9. The plaintiff in that case was engaged in a campaign to defeat an initiative petition and alleged that radio broadcasters had conspired, in violation of the Sherman Act, to provide free air space to an organization that supported the petition. *See id.* at 11. Applying the Supreme Court's mandate in *Noerr*, the First Circuit held that the case involved

"political opponents, not commercial competitors; and political objectives, not marketplace goals." *Id*. at 12. The court further explained that "access to the public media by expressly political organizations for the purpose of influencing political decisions of the general electorate" fell outside the scope of the Sherman Act. *See id*.

Other courts have followed suit, dismissing lawsuits that invoke antitrust claims to challenge activities directed at influencing the electorate. *See, e.g., Rodgers v. F.T.C.*, 492 F.2d 228, 231-32 (9th Cir. 1974) (holding that allegations of vertical and horizontal agreements by opponents of a ballot initiative to make misleading representations to the public did not state a claim for violation of antitrust laws); *Drake v. Cox Commc'n, Inc.*, No. 10-2671-JTM, 2011 WL 2680688, at *2-3 (D. Kan. July 8, 2011) (holding that failure to provide plaintiff with free air time to broadcast his political commentary did not fall within the scope of the Sherman Act); *Livingston Downs Racing Assoc., Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 531-32 (M.D. La. 2001) (holding that a publicity campaign to influence the voting public against plaintiffs was "beyond the remit of the antitrust laws.")

Plaintiffs, in an attempt to cast their political grievances as a commercial dispute, provide a laundry list of loosely-related commercial transactions, including: the corporate sponsorship of the debates; the revenue generated for universities and communities that host debates; the payment of production fees by the debate hosts to the CPD, and so on. *E.g.*, Compl. ¶¶ 35-39. These instances of incidental commercial activity do nothing to advance their claim. *See, e.g., Sheppard*, 929 F.2d at 499 (holding that seeking election for County Supervisor does not involve commercial activity simply because County Supervisor receives a salary). This listing of transactions having some connection to the general election presidential debates does not alter the key fact: the conduct Plaintiffs seek to regulate through the antitrust laws (the making of

23

decisions about who is invited to debate) is essentially political not commercial.  Applying the Supreme Court's holding in *Noerr*, federal courts are in agreement that the Sherman Act simply does not regulate political activity—including activities that affect the competition for public office—notwithstanding any incidental effects on commerce.  *See, e.g., Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Schs.*, 432 F.2d 650, 654 (D.C. 1970) ("[A]n incidental restraint of trade, absent an intent or purpose to affect the commercial aspect of the profession, is not sufficient to warrant application of the antitrust laws.")  Plaintiffs' allegations complain of conduct that is beyond the scope of the antitrust laws and their claims should be dismissed as a result.

**B.      Plaintiffs would have this court trample the CPD's First Amendment rights.**

Another fatal flaw in Plaintiffs' Complaint is that the relief they seek would trample the CPD's constitutional rights.  The CPD has a First Amendment right to sponsor and determine the expressive content of its debates, including the candidate selection that will advance its mission. *See Hurley*, 515 U.S. at 575 (holding that a parade organizer's choice not to include a particular group is protected by the First Amendment and "presumed to lie beyond the government's power to control.")  As the D.C. Circuit has explained in a case involving the CPD, "if this court were to enjoin the CPD from staging the debates or from choosing debate participants, there would be a substantial argument that the court would itself violate the CPD's First Amendment rights." *Perot*, 97 F.3d at 559 (citing *Hurley*, 515 U.S. at 575).  Plaintiffs' claims and the remedies they seek either would alter the CPD's expressive conduct or silence the CPD altogether.  *See id*. at 570 (noting that "[t]he selection of contingents to make a parade" is entitled to First Amendment protection); *see also Forbes*, 523 U.S. at 674 (1998) (noting that a broadcaster exercising editorial discretion in selecting programming to present is also engaging in speech activity).

In regulating political activity, Congress traditionally exercises extreme caution not to derogate First Amendment interests; and courts in turn exercise similar caution when interpreting such legislation.  *See Noerr*, 365 U.S. at 141.  When examining the scope of the Federal Election Campaign Act ("FECA"), for instance, courts have acknowledged that "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."  *Fed. Election Comm'n v. Nat'l Rifle Ass'n of Am.*, 254 F.3d 173, 190 (D.C. Cir. 2001) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)).  To that end, the Supreme Court cautioned that any regulation of campaign contributions must target "*quid pro quo* corruption or its appearance."  *McCutcheon v. Fed. Election Comm'n*, --- U.S. ---, 134 S.Ct. 1434, 1441 (2014) (internal quotation marks omitted).  The Court has "consistently rejected attempts to suppress campaign speech based on other legislative objectives" and has warned that "[n]o matter how desirable it may seem, it is not an acceptable government objective to level the playing field or to level electoral opportunities . . . ."  *Id*. at 1450 (internal quotation marks omitted).

Thus, when the FEC, which is charged with interpreting and enforcing the FECA, *see, e.g.,* 52 U.S.C. §30106(b)(1), turned to regulating debate sponsorship, it was mindful of the First Amendment interests at stake and has limited its efforts to ensuring that "staging organizations use pre-established objective criteria to avoid the real or apparent potential for a *quid pro quo*, and to ensure the integrity and fairness of the process.  Notice of Disposition of Petition for Rulemaking ("Notice of Disposition"), 80 Fed. Reg. 72616, 72617 (Fed. Election Comm'n Nov. 20, 2015) (internal quotation marks omitted).   Otherwise, the FEC left the choice of objective criteria to the staging organization's discretion while noting that its rules contain "an implied reasonableness requirement."  Corporate and Labor Organization Activity, 60 Fed. Reg. 64262.

The FEC recently rejected proposals for additional restrictions, and, in so doing, expressly noted that its regulations are "not intended to maximize the number of debate participants." Notice of Disposition, 80 Fed. Reg. 72617.

Plaintiffs, here, seek to achieve through the antitrust laws what has been rejected under the FECA—a government imposed standard dictating how a private entity, such as the CPD, determines to whom it will issue debate invitations. However, courts have long "recognized the need to cabin legislative authority over elections in a manner that sufficiently safeguards vital First Amendment freedoms," *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 281 (4th Cir. 2008), and the antitrust laws are no exception. It is well settled that the Sherman Act targets commercial activity, thus this case presents no occasion to "impute to Congress an intent to invade" the First Amendment rights that the courts have so cautiously protected. *Noerr*, 365 U.S. at 141 ("All of this caution would go for naught if we . . . [extended the] Sherman Act to regulate [political] activities . . . simply because those activities have a commercial impact.")

Because the Sherman Act "fairly admits of a less problematic construction," the cannon of constitutional avoidance requires that courts continue to "interpret [the] statute[] to avoid deciding difficult constitutional questions . . ." and limit its application to commercial activities rather than extending it to political disputes, as Plaintiffs propose. *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 455 (1989). The First Amendment concerns raised by Plaintiffs' attempt to extend the Sherman Act into the political arena further illustrate that Plaintiffs' claims are outside the scope of the federal antitrust laws and should be dismissed.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF § 1 OF THE SHERMAN ACT BECAUSE THEY ALLEGE A CONSPIRACY THAT IS IMPLAUSIBLE ON ITS FACE

To state a claim for relief under § 1 of the Sherman Act, Plaintiffs must plead facts sufficient to suggest that Defendants conspired to restrain trade. *See Twombly*, 550 U.S. at 553.

The Supreme Court's ruling in *Twombly* clarified "the need at the pleading stage [of a § 1 claim] for allegations plausibly suggesting (not merely consistent with) agreement . . . ." *Id.* at 545. Merely pointing to a contract or agreement is "not enough to show that an actual conspiracy to restrain trade is afoot." *Loren Data Corp. v. GXS, Inc.*, 501 Fed. Appx. 275, 280 (4th Cir. 2012). Moreover, the Supreme Court has cautioned against inferring a conspiracy when such inferences are implausible. *See id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 593 (1986)).

Here, Plaintiffs allege a thirty-year conspiracy that requires the cooperation of a number of individuals and entities, yet benefits no one in particular. *See Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1091 (9th Cir. 2015) (holding that participation in a conspiracy was implausible where potential benefit was not apparent). Plaintiffs assert, for instance, that the CPD hijacked the presidential and vice-presidential debates from the LWV, whom Plaintiffs refer to as "independent, non-partisan," and that the CPD is involved in a conspiracy with the DNC, RNC, as well as the Democratic and Republican party nominees to "block access to the debates for all other parties and candidates . . ." Compl. ¶¶ 24, 43. But the outgrowth of this alleged conspiracy is a debate format and candidate selection criteria that are virtually identical to the criteria employed by the CPD's predecessor, the LWV. *See* LWV Resp. at 6, MUR 1287 (1980); *Buchanan*, 112 F. Supp. 2d. at 74. In other words, Plaintiffs have accused Defendants of conspiring to implement wholly transparent criteria that had already been in place before the alleged conspiracy was formed, which makes little sense. Such allegations fail to meet the plausibility standard and are insufficient to state a claim for relief under § 1.

IV.   **PLAINTIFFS' FEDERAL ANTITRUST CLAIMS SHOULD BE DISMISSED BECAUSE RESTRICTIONS ON CANDIDATE PARTICIPATION IN PRESIDENTIAL DEBATES ARE NOT PER SE VIOLATIONS OF § 1 OF THE SHERMAN ACT, AND PLAINTIFFS FAIL TO IDENTIFY A LEGALLY COGNIZABLE MARKET TO STATE A CLAIM UNDER § 2 OF THE SHERMAN ACT**

The CPD, Fahrenkopf, and McCurry join and incorporate Section III.C.1 of the DNC and

Barack Obama's Statement of Points and Authorities in support of their Motion to Dismiss

Plaintiffs' Complaint.   For the additional reasons stated therein, Plaintiffs' Complaint fails to

state a claim under the federal antitrust laws.

V.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT**

Plaintiffs contend that they have a First Amendment right to participate in the general

election debates sponsored by the CPD.   *See* Compl. ¶¶ 109-132.   This claim fails for multiple

reasons.

As an initial matter, the First Amendment acts as a restriction on the conduct of state

actors.   *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542-43 (1987).   All

of the Defendants here are private parties; none is a state actor and Plaintiffs do not contend

otherwise.   It is well-settled that sponsoring a debate does not subject a private entity to the First

Amendment's prohibitions. [15]   *See, e.g., Hagelin*, 1996 WL 566762, at *6 (holding that "CPD is

---

[15] Plaintiffs' allegations also refer to *Shelley v. Kraemer*, 334 U.S. 1 (1948) to suggest that judicial enforcement of a Memorandum of Understanding between Barack Obama and Mitt Romney—an agreement to which the CPD is not a party—would amount to state action.   (Compl. ¶ 114.)   But the Complaint stops short of asserting that *Shelley* supports Plaintiffs' First Amendment claim.   To be sure, *Shelley* has nothing to do with this case.   There, the Supreme Court held that judicial enforcement of a racially discriminatory covenant violated the petitioners' (against whom the covenant was enforced) Fourteenth Amendment rights.   *Shelley v. Kraemer*, 334 U.S. 1, 7 (1948).   However, courts have been reluctant to apply *Shelley's* holding to judicial enforcement of other agreements outside the context of racially restrictive covenants.   *See, e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 282 (1993) ("Any argument driven to reliance upon an extension of [*Shelley*] is obviously in serious trouble."); *Democratic Nat'l Comm. V. Republican Nat'l Comm.*, 673 F.3d 192, 204 (3d Cir. 2012) (distinguishing *Shelley* and holding that the court's enforcement of a consent decree did not constitute state action); *Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 507 (7th Cir. 2000) (holding that the enforcement of an arbitration contract does not convert the contract into state action).   In any event, Plaintiffs' reference to *Shelley* is academic because no court has enforced any of the provisions in the Memorandum of Understanding, and, for the reasons stated above, Plaintiffs do not have any

not a state actor" and dismissing the plaintiffs constitutional claims).  Even if there were state action, which there is not, Plaintiffs have no First Amendment right to debate.[16] As the Supreme Court held in *Forbes*, even a state-owned broadcaster can exclude a candidate from a debate for lack of support or public interest without running afoul of the First Amendment.  *See* Forbes, 523 U.S. at 682-83.

Plaintiffs further contend that "a presidential candidate who is excluded from presidential debates has zero chance of winning the general presidential election," Compl. ¶ 111, and they equate this to the circumstances addressed in *Terry v. Adams*, 345 U.S. 461 (1953), Compl. ¶¶ 110-12.  The D.C. Circuit has rejected this very argument when asserted against the LWV.  *See Johnson*, 829 F.2d 157.

In *Johnson*, the court considered a suit brought by the presidential and vice presidential candidates of the Citizens Party against the LWV, the RNC, the DNC, the major party candidates and others challenging, under the First Amendment, the plaintiffs' exclusion from general election debates sponsored by the LWV.  *See id*.  The plaintiffs in *Johnson* claimed that "the televised presidential and vice-presidential debates had become so institutionalized as to be a prerequisite for election," and that *Terry v. Adams* provided a basis to assert First Amendment claims against the debate sponsor.  *Id*. at 159.

---

constitutional right to be included in the presidential or vice presidential debates.  *See Johnson v. F.C.C.*, 829 F.2d 157, 162 (D.C. Cir. 1987).

[16] To be clear, Plaintiffs have not been denied the opportunity to debate.  In October, 2012, Plaintiffs Gary Johnson and Jill Stein participated in a presidential debate with two other third-party and independent candidates.  *See* Third Party Presidential Candidates Debate, C-Span, *available at* http://www.c-span.org/video/?308995-1/third-party-presidential-candidates-debate (Oct. 23, 2012).  And Independent Debate 2016 has announced that Jill Stein is a confirmed participant in a presidential debate to be held on January 28, 2016.  *See* Press Release, Independent Debate 2016, First Independent Presidential Debate Jan 28 (Jan. 3, 2016), *available at* http://www.prlog.org/12521864-first-independent-presidential-debate-jan-28th.html.  Plaintiffs invoke the First Amendment here to force certain candidates to debate with them and a specific debate sponsor to host the debate, neither of which is a constitutional right.  *See Johnson v. F.C.C.*, 829 F.2d at 162.

*Terry*, however, provides no support for a candidate seeking an invitation to a presidential debate.  In *Terry* the state allowed a discriminatory private organization, the Jaybird Association, to deny African Americans the right to vote by duplicating the county's election process in its own private primary, the winner of which would typically run unopposed in the Democratic primary.  345 U.S. at 463.  As a result, "black voters were effectively deprived of meaningful participation in the selection of county officials."  *Johnson*, 829 F.2d at 164.

The D.C. Circuit in *Johnson* flatly rejected the plaintiffs' attempt to draw an equivalency between the practices in *Terry* and participation in a debate.  The D.C. Circuit explained, "[n]o such barrier was present in this case, where voters were not hindered in their ability to cast their votes for petitioners or otherwise take part in the electoral process merely by virtue of petitioners' exclusion from the televised debates."  *Id.* at 164.  The Court expressly rejected the notion implicit in Plaintiffs' complaint that the First Amendment requires that all candidates be treated equally.  *See id.* at 165 ("While their inclusion in the televised debates undoubtedly would have benefited their campaign, the Supreme Court has held that the constitution does not demand that all candidates be subsidized to the point that all are equal in terms of financial strength and publicity.")

Because Defendants are not state actors, and because Plaintiffs have no First Amendment right to participate in a particular debate, Plaintiffs' Complaint fails to state a claim under the First Amendment.

## VI.   PLAINTIFFS HAVE NOT IDENTIFIED ANY SPECIFIC CONTRACTUAL OR ECONOMIC RELATIONSHIPS TO SUPPORT A CLAIM FOR INTENTIONAL INTERFERENCE

Plaintiffs' fourth claim for relief seeks damages for "prospective contractual and economic relationships with third parties" that would have "provided economic and other benefits to Plaintiffs" but for their exclusion from the presidential debates.  Compl. ¶¶ 135-

36  These conclusory allegations lack the specificity to state a claim for relief, *Twombly*, 550 U.S. at 555, and fall well short of the pleading standards for an intentional interference claim under District of Columbia law.

A plaintiff asserting an intentional interference claim must establish: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage.  *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999).  General allegations of harm will not suffice.  To state a plausible claim, a plaintiff must identify specific anticipated transactions, such as "specific book deals, specific sources of prospective employment, the development of specific property, the opportunity to represent a specific client, and so on."  *Guttenberg v. Emery*, 41 F. Supp. 3d 61, 73 (D.D.C. 2014); *see also Xereas v. Heiss*, 933 F. Supp. 2d 1, 11 (D.D.C. 2013) (holding that an intentional interference claim cannot survive "where the plaintiff . . . only provides general references to potential opportunities.")  Moreover, Plaintiffs must allege sufficient facts to demonstrate that their business expectancies are commercially reasonable to anticipate.  *See Command Consulting Group, LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 53 (D.D.C. 2009).

Here, Plaintiffs have not identified any valid business expectancies.  They merely speculate that their participation in the CPD-sponsored debates would open the flood gates to several broad categories of commerce, including economic relationships with "debate organizers[,] . . . sponsors, contributors, and media outlets," and that they "had legitimate expectations of economic relationships with third parties."  Compl. ¶ 135.  This court has rejected similar allegations that relied on broad categories of potential economic relationships,

*Neuraliq, Inc.*, 623 F. Supp. 2d at 53 (dismissing intentional interference claim where plaintiff "merely outline[d] three broad categories of relationships that may have been affected by the plaintiff's conduct"), and has made clear that an intentional interference claim requires "rather specific business opportunities." *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 29 (D.C. Cir. 2010) (holding that allegations of "loss of future growth" and "access to markets" failed to identify valid business expectancies). Plaintiffs' allegations point to generic opportunities that may be available to any successful political party or candidate, which fall well short of the specificity required to state a claim for intentional interference under D.C. law. *See id.*

Plaintiffs' claims are also speculative. Rather than explain how their alleged prospective relationships with presidential debate organizers, sponsors, etc. are commercially reasonable to expect, they rely on far flung assumptions about the benefits that would flow from their participation in the debates. *See Neuraliq, Inc.*, 623 F. Supp. 2d at 53 (dismissing intentional interference claim where the plaintiff "offered no facts whatsoever suggesting that [the business expectancy] . . . was commercially reasonable to expect.") (internal quotation marks omitted). As is true for much of their Complaint, Plaintiffs' purported business expectancies consist of pure speculation. Their allegations assume—without any supporting facts—that a debate sponsor would have emerged; that the sponsor would have invited Johnson and Stein to debate; that the Democratic and Republican candidates would have participated in the debate; and that the sponsors, media outlets, and contributors would be inspired to form new economic relationships with Plaintiffs. *But see Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C. 2002) (holding that an at-will employee had no valid business expectancy in continued employment) *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978) (holding that business expectancy dependent on government approval was not commercially reasonable to anticipate); *cf. Fulani*,

32

729 F. Supp. at 163 (holding that a candidate's alleged loss of media exposure and voter support as a result of not being invited to a debate was speculative).   The series of contingencies upon which their claims rely are both implausible and insufficient to state a claim for intentional interference.

## CONCLUSION

For the foregoing reasons, Defendants CPD, Frank J. Fahrenkopf, Jr., and Michael D. McCurry respectfully request that this Court dismiss the Complaint with prejudice.


Dated: January 8, 2016                     Respectfully Submitted,


                                           By:/s/Lewis K. Loss_____
                                           Lewis K. Loss, Bar No. 375793
                                           LLoss@ljwllp.com
                                           Uzoma Nkwonta, Bar No. 975323
                                           UNKwonta@ljwllp.com
                                           **LOSS, JUDGE & WARD, LLP**
                                           600 14th Street, N.W., Suite 450
                                           Washington, D.C.  20005
                                           Telephone:  202.778.4060
                                           Facsimile:  202.778.4099

                                           *Attorneys for Defendants*
                                           *Commission on Presidential Debates, Frank J.*
                                           *Fahrenkopf, Jr., and Michael D. McCurry*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2016, I electronically filed the foregoing with the Clerk

of the United States District Court for the District of Columbia by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Respectfully submitted,

/s/ Lewis K. Loss
Lewis K. Loss, Bar No. 375793
LLoss@ljwllp.com
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099