# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY E. JOHNSON 2012, INC.; LIBERTARIAN NATIONAL COMMITTEE; JAMES P. GRAY; GREEN PARTY OF THE UNITED STATES; JILL STEIN; JILL STEIN FOR PRESIDENT and CHERI HONKALA,<br><br>                    Plaintiffs,<br><br>        v.<br><br>COMMISSION ON PRESIDENTIAL DEBATES; REPUBLICAN NATIONAL COMMITTEE; DEMOCRATIC NATIONAL COMMITTEE; FRANK J. FAHRENKOPF, JR.; MICHAEL D. McCURRY; BARACK OBAMA; and WILLARD MITT ROMNEY,<br><br>                    Defendants. | Case No.  1:15-CIV-01580-RMC |

## REPUBLICAN NATIONAL COMMITTEE'S REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTIONS TO DISMISS

Charles H. Bell, Jr.
*cbell@bmhlaw.com*
**BELL, McANDREWS & HILTACHK, LLP**
455 Capitol Mall, Suite 600
Sacramento, CA  95814
Tel:  (916) 442-7757
Fax: (916) 442-7759

John R. Phillippe, Jr.
*jphillippe@gop.com*
**REPUBLICAN NATIONAL COMMITTEE**
310 First Street, SW
Washington, DC 20003
Tel:  (202) 863-8638
Fax:  (202) 863-8654

*Attorneys for Defendant*
*REPUBLICAN NATIONAL COMMITTE*

# TABLE OF CONTENTS

**Page No.(s)**

TABLE OF CONTENTS ..................................................................................................I

TABLE OF AUTHORITIES ...........................................................................................II

I. INTRODUCTION............................................................................................... 1

II. LEGAL ARGUMENT........................................................................................ 4

   A. PLAINTIFFS' HAVE NO FIRST AMENDMENT "RIGHT OF ACCESS" TO
      PARTICIPATE IN THE CPD'S PRESIDENTIAL DEBATES. ......................... 4

      1. The *Tornillo, Hurley* and *Sistrunk* Cases Have Rejected a "Right of Access" for
         Speakers - Which is the Real Object of Plaintiffs' Claims. .............................................. 4

      2. *Arkansas Education Television Commission* Specifically Rejected a "Right of Access"
         to Candidate Debates........................................................................................................ 7

      3. Defendants Are Not State Actors and Plaintiffs' Efforts to Invoke State Action Cases
         Are Unpersuasive. ............................................................................................................ 8

      4. Presidential Debates Are Not Public Forums, and Neither *Marsh* Nor *PruneYard*
         Supports a "Right of Access.".......................................................................................... 11

      5. Plaintiffs' "Right of Access" Claim Necessitates Compelled Participation by
         Defendants Romney and Obama Which is Forbidden by the First Amendment. .......... 13

   B. PLAINTIFFS' ANTITRUST CLAIMS ARE MERITLESS............................................. 15

      1. Plaintiffs Seek to Adjudicate Speech Rights, Not Economic Injury.............................. 17

      2. *Tornillo*, A Case Plaintiffs Do Not Mention, Distinguishes *Associated Press*,  the Case
         On Which Plaintiffs Found Their Antitrust Claim............................................................ 17

      3. Plaintiffs' Section 1 Claim Fails the Rule of Reason Test............................................ 19

      4. Plaintiffs' Antitrust Claims Fail the "Essential Facilities" Test.................................... 20

   C. PLAINTIFFS' INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
      ADVANTAGE CLAIM FAILS FOR WANT OF CLARITY ........................................... 24

   D. PLAINTIFFS HAVE NOT PLED FACTS THAT PLAUSIBLY ENTITLE THEM TO
      RELIEF UNDER THE ANTITRUST LAWS................................................................... 25

III. CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page No.(s)

### Cases

\* *Arkansas Educational Television Commission v. Forbes*
523 U.S. 666 (1998) ................................................................. 7, 9, 12, 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................. 2, 25

\* *Associated Press v. United States*
326 U.S. 1 (1945) ................................................................. passim

*Banneker Ventures, LLC v. Graham,*
798 F.3d 1119 (D.C. Cir. 2015) ................................................................. 24

*Boy Scouts of America v. Dale*
530 U.S. 640 (2000) ................................................................. 14

*Branzburg v. Hayes*
408 U.S. 665 (1972) ................................................................. 18

*Browning v. Clinton*
292 F.3d 235 (D.C. Cir. 2002) ................................................................. 24

*California Democratic Party v. Jones*
530 U.S. 567 (2000) ................................................................. 9

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.*
148 F.3d 1080 (D.C. Cir. 1998) ................................................................. 21

*Chandler v. Georgia Pub. Telecommunications Commission*
917 F.2d 486 (11th Cir. 1990) ................................................................. 12

*Citizens United v. Federal Election Commission*
558 U.S. 310 (2010) ................................................................. 3

*Clingman v. Beaver*
544 U.S. 581 (2005) ................................................................. 14

\* *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*
365 U.S. 127 (1961) ................................................................. 2, 17

*F.T.C v. Superior Court Trial Lawyers Ass'n*
493 U.S. 411 (1990) ................................................................. 19

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*
551 U.S. 449 (2007) ................................................................. 2

## TABLE OF AUTHORITIES CONT.

Page No.(s)

*Hecht v. Pro-Football, Inc.*
570 F.2d 982 (D.C. Cir. 1977) ................................................. 23

\* *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*
515 U.S. 557 (1995) .............................................. 3, 4, 5, 16

*International Society of Krishna Consciousness v. Lee*
505 U.S. 672 (1992) ............................................... 11, 12

*Jenness v. Fortson*
403 U.S. 431 (1971) ...................................................... 9

*Johnson v. FCC*
829 F.2d 157 (D.C. Cir. 1987) ....................................... 7, 9

*Lloyd Corp., Ltd. v. Tanner*
407 U.S. 551 (1972). ..................................................... 13

*Lorain Journal Co. v. U.S.*
342 U.S. 143 (1951) ..................................................... 20

*Marsh v. Alabama*
326 U.S. 501 (1946) ............................................. 11, 12, 13

*MCI Communications v. American Tel. & Tel. Co.*
708 F.2d 1081 (7th Cir. 1983) ........................................ 22

\* *Miami Herald v. Tornillo*
418 U.S. 241 (1974) ............................................... passim

*Moore v. City of East Cleveland*
431 U.S. 494 (1977) ..................................................... 14

\* *N.A.A.C.P. v. Claiborne Hardware*
458 U.S. 886 (1982) ................................................. 18, 19

*Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*
791 F.Supp.2d 33 (D.D.C. 2011) .................................... 24

*National Collegiate Athletic Ass'n. v. Board of Regents*
468 U.S. 85 (1984) ...................................................... 16

*National Society of Professional Engineers v. U.S.*
435 U.S. 679 (1978) ..................................................... 20

*New York Times Co. v. Sullivan*
376 U.S. 254 (1964). .............................................. 7, 11

## TABLE OF AUTHORITIES CONT.

**Page No.(s)**

*Olympia Equipment Leasing v. Western Union Tel. Co.*
797 F.2d 370 (7th Cir. 1987) ................................................................. 21

*PruneYard Shopping Ctr. v. Robins*
447 U.S. 74, 81 (1980) ............................................................. 11, 12

*Roberts v. United States Jaycees*
468 U.S. 609 (1996) ....................................................................... 15

*Rumsfeld v. Forum for Academic & Institutional Rights*
547 U.S. 47 (2006) ......................................................................... 15

*Shelley v. Kramer*
334 U.S. 1 (1948) ........................................................................... 10

* *Sistrunk v. City of Strongsville*
99 F.3d 194 (6th Cir. 1996) ............................................... 4, 5, 6, 16

*Storer v. Brown*
415 U.S. 724 (1974) ....................................................................... 23

*Tashjian v. Republican Party of Connecticut*
479 U.S. 208 (1986) ................................................................. 14, 16

*Terry v. Adams*
345 U.S. 461 (1953) ................................................................... 8, 10

*U.S. v. Terminal R.R.*
224 U.S. 383 (1912) ....................................................................... 21

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*
330 U.S. 75 (1947) ......................................................................... 10

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*
540 U.S. 398 (2004) ................................................................. 21, 22

*Vieth v. Jubilerer*
541 U.S. 267 (2004) ......................................................................... 9

*Wooley v. Maynard*
430 U.S. 705 (1977) ................................................................... 4, 15

## <u>TABLE OF AUTHORITIES CONT.</u>

<u>Page No.(s)</u>

**<u>Constitutional Provisions</u>**

*United States Constitution:*
    Article I ............................................................................................................................... 2
    Article III............................................................................................................................. 10

**<u>Other Authorities</u>**

Bradley A. Smith, *Unfree Speech* 148 (Princeton University Press 2001).................................. 13

# I.

## INTRODUCTION

Plaintiffs' Opposition ("Pl. Mem. Opp. Mot. Dismiss") (Doc. 45) to the Republican National Committee's ("RNC") Motion to Dismiss (Doc. 38) demonstrates their strained attempt to create an end-run around the First Amendment using claims under federal antitrust law that courts have already foreclosed.  This is not, as Plaintiffs claim, a case of first impression simply because they have invented a novel theory.  It is rather a thinly-cloaked attempt to recast firmly rejected claims into an antitrust mold with the same ultimate effect: to carve out a "right of access" for minor party candidates into the presidential debates conducted by the Commission on Presidential Debates ("CPD") so that they may take advantage of the media attention afforded to the two major party candidates who have demonstrated significant public support.  This would encroach unconstitutionally on the candidates' right to debate whom they see fit and the CPD's right to hold a debate between the candidates it believes are the most salient in the quadrennial national political conversation about who should be elected President.

Plaintiffs completely fail to rebut the RNC's and co-defendants' arguments that this is not an antitrust case and that the antitrust laws were never intended to interfere with or regulate the political process.  Plaintiffs' effort to force this case into the antitrust mold simply does not work.

Plaintiffs continue to ignore that political activity in holding debates is not commercial activity within the meaning of the Sherman Act, instead claiming that Defendants seek an exception to the Sherman Act. [See Pl. Mem. Opp. Mot. Dismiss, p. 35; ("Defendants wrongly insinuate that the Sherman Act contains an atextual exception for political activity").]  This is contrary to the United States Supreme Court's longstanding holding that the regulation of political activity has "no basis whatever in the legislative history of that Act." *Eastern R.R.*

1

*Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961). The court has consistently adhered to this holding by interpreting the Sherman Act in a way that would "avoid important constitutional questions," specifically with respect to the First Amendment. *Id.* at 138.

It is clear to see why such activity falls outside of federal antitrust law: our founders entrusted Congress with the power to regulate certain forms of commerce in Article I of the Constitution, from which federal antitrust law derives, but provided the First Amendment as a bulwark against regulation on speech, especially political speech. Defendants' activity in selecting who they will debate is unquestionably political speech and the fact that money is incidentally involved does not change that reality. Even if such a conclusion were in doubt, the draw must go in favor of speech, not censorship. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 482 (2007) ("When it comes to drawing difficult lines in the area of pure political speech – between what is protected and what the government may ban…[w]e give the benefit of the doubt to speech, not censorship".)

Plaintiffs' arguments rely on rhetorical devices, not legal precedent. [See *e.g.*, Pl. Mem. Opp. Mot. Dismiss, p. 7; ("Politics and business are synonyms, not antonyms. Ohio Senator Mark Hanna understood as far back as 1895, '[t]here are two things that are important in politics. The first is money and I can't remember what the second one is.'").] Political statements by former U.S. Senators and popular beliefs espoused by the news media collapsing the distinction between (or conflating) political and commercial activity are not necessarily accurate statements of law and do not give this court the requisite plausibility under the *Iqbal* standard to change a century of First Amendment and antitrust precedent to mandate that the CPD allow candidates into its debates who do not meet its criteria so that they can piggyback on the popular attention earned by the candidates who have qualified. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' unusual claims cannot be accepted because this court must follow major Supreme Court precedents interpreting the free speech clause and its implied right of association, especially *Miami Herald v. Tornillo,* 418 U.S. 241 (1974), which holds that a private party may not be compelled to include unwanted speech in its speech, and *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995), which holds that a private association may not be compelled to include an unwanted person.   Plaintiffs' attempt to justify this extraordinary judicial claim is that *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), has *allowed* more speech into election contests (Pl. Mem. Opp. Mot. Dismiss, pp. 4-5) and (somewhat anomalously) that this court should therefore *mandate* the levelling of the playing field with regard to that speech in order to ensure that minor parties have a greater chance of electoral success.   However anomalous these claims, the Supreme Court repeatedly has held that such a result is "wholly foreign" to the First Amendment, with a particularly forceful reiteration in *Citizens United* itself. 558 U.S. at 350. This case is ripe for dismissal.[1]

Plaintiffs attempt to convince this court that the reason that minor party candidates generate little interest is because of anticompetitive behavior of the Republican and Democratic parties, and that if the CPD was required to include Plaintiffs in its debates, this advantage would dissipate (Pl. Mem. Opp. Mot. Dismiss, p. 12).  This is unsupported speculation.  Plaintiffs will not gain the competitive status they seek by applying antitrust law to presidential debates or political party activity in particular.  Rather, their claims highlight the error of applying antitrust law to political activity, particularly where it would abridge freedom of speech through a combination of "compelled access" and "forced association."

---

[1] RNC joins in co-Defendants' positions set forth in their Replies.

## II.

## LEGAL ARGUMENT

**A.    PLAINTIFFS' HAVE NO FIRST AMENDMENT "RIGHT OF ACCESS" TO PARTICIPATE IN THE CPD'S PRESIDENTIAL DEBATES.**

      **1.    The *Tornillo, Hurley* and *Sistrunk* Cases Have Rejected a "Right of Access" for Speakers - Which is the Real Object of Plaintiffs' Claims.**

In reality, Plaintiffs do not want to participate in *debates*. They could stage debates themselves. All they need to do is rent a hall, find a moderator, and show up to debate. The catch is, as they know, few would be interested in those debates. What they really want is something completely different, which is a court decree that does two things: (a) requires the CPD to allow them to participate in a debate sponsored by the CPD; and (b) requires the Democratic and Republican party presidential candidates to show up and debate them. Absent this possibility, they ask this court for an order enjoining Defendants from debating without also inviting their candidates (Pl. Mem. Opp. Mot. Dismiss, p. 41). Such a requirement that major party nominees debate Plaintiffs would violate the First Amendment rights of those major party nominees. It is "forced speech" and "forced association." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("Right of freedom of thought protected by First Amendment against state action includes both right to speak freely and right to refrain from speaking at all.")

Instead, Plaintiffs seek to compel a "right of access" to the presidential debates using the sledgehammer of the antitrust laws – effectively turning statutes intended to safeguard economic competition into laws that require access to a private party's speech. However, the Supreme Court in *Miami Herald v. Tornillo* held such access laws run afoul of the First Amendment. 418 U.S. 241, 258 (1974). Specifically, the court addressed a statute that required a newspaper to print the response of a political candidate who the newspaper "assailed regarding his personal

character or official record." *Id.* at 244.  Like the private newspaper aggrieved by the Florida "right of reply" statute in *Tornillo*, the CPD is fully protected by the First Amendment, and *Tornillo* makes it clear that the court found no favor in attempts to misuse the antitrust laws to attain "access" and, through "governmental coercion," to interfere with freedom of speech. *Id.* at 256 ("A responsible press is an undoubtedly desirable goal, but press responsibility is not mandated by the Constitution and like many other virtues it cannot be legislated.")

Subsequent cases reinforce *Tornillo*'s principle that organizations like the CPD are protected in their speech against the unwanted inclusion of government-mandated participants. In *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995), the Supreme Court held that a veterans' group's decision to exclude a homosexual group from its parade was protected by the First Amendment.  The parade was being held on public streets and pursuant to a city permit, so there was state action present unlike here (discussed *infra*), but the court's point was a simple one: the veterans were conveying their own political message and were not required to muddle their message with the homosexual group's message. *Hurley* at 572-73. ("Since every participating unit affects the message conveyed by the private organizers, the state courts' application of the statute produced an order essentially requiring petitioners to alter the expressive content of their parade.") Although the *Hurley* plaintiffs sued under an antidiscrimination statute, analogous to antitrust law, the First Amendment rights of the organizers prevailed.

The U.S. Court of Appeals for the 6th Circuit specifically addressed the application of this principle to a political candidate event in *Sistrunk v. City of Strongsville*, 99 F.3d 194 (6th Cir. 1996), which held that the Bush '92 campaign and the City of Strongsville did not violate the plaintiff's First Amendment rights by denying her admission to a Bush campaign rally held on

public grounds.  Rather, the organizers had a First Amendment right to exclude her.  The court explained:

> Plaintiff's only claim is that she was not permitted to participate *in the committee's speech* while expressing her own discordant views. To require that the organizers include buttons and signs for Bill Clinton in the demonstration would alter the message the organizers sent to the media and other observers, even if the holders of signs and wearers of buttons did not otherwise interfere with the pro-Bush rally. Just as the organizers of the parade [in *Hurley*] could not be compelled to include in their message the discordant message of GLIB, the committee that organized the rally for George Bush could not be compelled to include in its message an expression of confidence in Clinton. The plaintiff could have held a pro-Clinton rally on another day just as GLIB could have held its own parade at another time.

(99. F.3d at 199.) (Emphasis in original)

Similarly, Plaintiffs in the instant matter pray for access to a private political event.  Their inclusion would "alter the message" of the organizers through their debate participation just as the plaintiffs in *Sistrunk* did so through their rally participation.  Accordingly, just as the plaintiffs' group was advised to "[hold] a pro-Clinton rally on another day" there is nothing to bar the Plaintiffs here from holding their own debate at another time. *Id.* This result is the only one that would comport with the demands of the First Amendment.

Plaintiffs' prayer for access to Defendant CPD's presidential debates must be rejected because the First Amendment protects the CPD's editorial decision to include only candidates who have met its 15% polling threshold.  Plaintiffs' demand for inclusion in the CPD presidential debates or in the alternative, to prohibit the CPD from holding presidential debates unless they are included, raises the "the heavy hand of government intrusion" that Justice White in his *Tornillo* concurrence warned about – intrusion which "would make the government the censor of what the people may read and know." *Id.* at 260.

2.    ***Arkansas Education Television Commission* Specifically Rejected a "Right of Access" to Candidate Debates.**

The U.S. Supreme Court has had the occasion to consider a "right of access" to candidate debates and rejected the notion because of the impact the forced inclusion of speech would have on the speaker.  In *Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666, 681 (1998), the court stated:

> Were it faced with the prospect of cacophony, on the one hand, and First Amendment liability, on the other, a public television broadcaster might choose not to air candidates' views at all. A broadcaster might decide "'the safe course is to avoid controversy,'...and by so doing diminish the free flow of information and ideas." *Turner Broadcasting System, Inc.*, 512 U.S., at 656, 114 S.Ct., at 2466 (quoting *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 257, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974)). In this circumstance, a "[g]overnment-enforced right of access inescapably 'dampens the vigor and limits the variety of public debate.'"

(*Ibid.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)).

The court's reliance on *Tornillo* in the debates context is telling.  It makes it clear that editorial judgment protected by the First Amendment extends to the decision of which candidates to include or exclude from a debate – even if the sponsor is the government.  This principle is consistent across the court's First Amendment jurisprudence, and lower federal courts have similarly rejected a "right of access" to presidential debates. See, *e.g.*, *Johnson v. FCC*, 829 F.2d 157, 160 (D.C. Cir (1987)) ("We conclude that the Commission properly determined that petitioners had no right recognized by the Communications Act or the broadcast-access precedents to be included in the televised debates.").  The instant matter is a much easier case because Defendants are private parties, not state actors bound by the dictates of the First Amendment.  Just as the independent candidate in *Arkansas Educational Television Commission*

had no right to appear on the debate stage with the major party candidates, Plaintiffs here have no right to be included in the CPD's debates.

### 3. Defendants Are Not State Actors and Plaintiffs' Efforts to Invoke State Action Cases Are Unpersuasive.

Plaintiffs' efforts to convince this Court to impose state-actor status on private party defendants, in order to further their asserted First Amendment rights (Pl. Mem. Opp. Mot. Dismiss, p. 47), are unpersuasive.   The courts have determined private actors may be characterized as state actors only in extraordinary circumstances.  There is no good argument to be made for extension here.  Those few cases that do treat private parties as bound by the U.S. Constitution have, as their common thread, the performance of a duty traditionally exercised by the government, such as sponsoring elections or owning an entire town.   The holding of presidential debates is not such a duty.

Plaintiffs contend that Defendants' activity in holding debates between the two major party candidates is state action by reason of their importance in the election season.  For this proposition, they cite to *Terry v. Adams,* 345 U.S. 461 (1953), which applied the Fifteenth Amendment to a racially-restrictive primary election held by a private political party (Pl. Mem. Opp. Mot. Dismiss, p. 50).   However, that case applied the Constitution to private conduct on very limited grounds that clearly do not apply in this case.   In *Terry*, a private party was essentially holding an election to exclude African-Americans from the democratic process. 345 U.S. at p. 469 (1953) ("It violates the Fifteenth Amendment for a state, by such circumvention, to permit within its borders the use of any device that produces an equivalent of the prohibited election").  Subsequent cases make clear that *Terry* was a narrow holding that was intended to prevent private parties from creating an end-run around the post-Civil War amendments. See,

*e.g., California Democratic Party v. Jones*, 530 U.S. 567, 573 (2000) ("These cases held only that, when a state prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination against Negroes' that the parties… bring into the process – so that the parties' discriminatory action becomes state action under the Fifteenth Amendment.")  The U.S. Court of Appeals for the District of Columbia Circuit has rejected the notion that the presidential debates are so important to the candidates that the denial of access by a private party can be considered a violation of the excluded speaker's rights. *Johnson v. FCC*, 829 F.2d 157, 165 (D.C. Cir 1987) ("The exclusion of petitioners from the debates did not prevent them from waging an effective campaign or deny voters the opportunity to exercise their First Amendment rights by casting their votes for petitioners").

Plaintiffs here are not akin to African-Americans who were denied the right to vote by a private political party's nomination process.  Even if it was Defendants' intent specifically to exclude minor party candidates, Plaintiffs' claims would not be actionable because political affiliation is not a protected class under the Constitution.  *Vieth v. Jubilerer.* 541 U.S. 267, 286 (2004) (unlike racial considerations, politics is an "ordinary and lawful motive.").  Indeed, the U.S. Supreme Court has even stated that a state actor can discriminate against candidates on the basis of lack of public interest. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (holding that a state may deny candidates ballot access for failure to reach "a significant modicum of voter support."); see also *Arkansas Educational Television Commission v. Forbes, supra*, 523 U.S. 666 (1998) (holding that a state actor broadcaster may limit debate to Republican and Democratic candidates as long as the decision to exclude a candidate was not based on his viewpoint). Because Defendant CPD's private action in holding debates between candidates who meet a 15% polling threshold does not amount to a private end-run around antidiscrimination provisions of

the Constitution, it is not a proper basis to impose state actor status on Defendants in the way the Jaybird Party's primary was in *Terry*.

Plaintiffs contend that even if Defendants are not state actors, state action would still be implicated by judicial enforcement of the Memorandum of Understanding (MOU) (Pl. Mem. Opp. Mot. Dismiss, p. 52).[2]  Plaintiffs attempt to analogize the instant matter to *Shelley v. Kramer*, 334 U.S. 1 (1948) in which the court held that judicial enforcement of a racially-restrictive covenant is state action.   In that case, it was the judicial action in enforcing the agreement, not the private conduct in making the reprehensible contract to discriminate against African-Americans that was held to be state action. *Id.* at 16 ("State action in violation of the Fourteenth Amendment is equally repugnant to the constitutional commands whether directed by state statute or taken by a judicial official in absence of statute.").

*Shelley* is inapplicable to the instant matter because no one has sought enforcement of the MOU.  This means that the holding Plaintiffs request of this court would amount to an advisory opinion in violation of Article III. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("Federal courts established pursuant to Article III of the Constitution do not render advisory opinions, and for adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions are requisite.").  If enforcement of the MOU was sought and found to be in violation of the First Amendment, it would not be on account of the suppression of any speech of the Plaintiffs as minor parties.  Indeed, no case holds that the agreement by two parties to speak amounts to a violation of the speech rights of a third party, and the idea runs counter to the purpose of the Speech Clause, which is to ensure "the widest possible dissemination of information from diverse and antagonistic sources." *New York Times Co. v.*

---

[2] Neither the RNC nor the DNC were parties to the 2012 MOU cited by Plaintiffs.

*Sullivan*, 376 U.S. 254, 266 (1964) (quoting *Associated Press v. United States*, 326 U.S. 1, 20 (1945)).  Rather, the First Amendment problem would more likely be that a candidate who has signed the MOU has the right to debate who the candidate sees fit, which is exactly the reason minor party candidates have no "right of access" to Defendant CPD's presidential debates.

### 4.    Presidential Debates Are Not Public Forums, and Neither *Marsh* Nor *PruneYard* Supports a "Right of Access."

Plaintiffs attempt to label the CPD debates as a "surrogate public park" using a functional approach in order to buttress their right of access claim (Pl. Mem. Opp. Mot. Dismiss n, p. 49).  The CPD debates, they claim, have become essential to candidates' legitimacy, and this gives a court license to label them as public forums (Pl. Mem. Opp. Mot. Dismiss, p. 50).  Such an approach to public forum analysis has long been rejected by the U.S. Supreme Court in favor of a formalistic approach.  In *International Society of Krishna Consciousness v. Lee*, 505 U.S. 672 (1992), the court made it clear that a space may not become a public forum by reason of increased importance or diminishing alternative spaces.  Rather, a public forum requires the space to be traditionally, from "time out of mind," open to public discourse (streets, parks, and sidewalks), or be the result of the state intentionally opening a nontraditional forum for public discourse. *Id.* at 679-680.  A private presidential debate is neither.  First, the state does not own the debates; they are instead conducted by private parties.  Second, even if it did, a debate being a "surrogate public park" would be of no use to Plaintiffs because the concept of a traditional public forum, like a public park, is one that the court has refused to expand, instead limiting it to streets, parks, and sidewalks. *Id.*  A presidential debate is obviously not literally a street, park, or sidewalk, and the court has refused to allow metaphors to confer traditional public forum status as Plaintiffs request here. *Id.*  Further, even if the state did sponsor the debate, there exists no manifest intent to open its stage to unfettered discourse from anyone and everyone who wants to

participate, which would foreclose the notion of the debate being a designated public forum. *Id.* Finally, even if the debates were a public forum, Plaintiffs would still have no right of access because the 15% threshold would merely need to be "reasonable and viewpoint neutral." *Arkansas Educational Television Commission v. Forbes, supra*, 523 U.S. 666 (1998).   Although Plaintiffs contend that any qualification threshold that denies access to those who have qualified for enough state ballots to grant them a "mathematical possibility" of attaining 270 electoral votes, even qualification devices that specifically include only the Republican and Democratic candidates have been upheld. *Chandler v. Georgia Pub. Telecommunications Commission*, 917 F.2d 486, 489 (11th Cir. 1990).   Plaintiffs clearly have no credible argument under the public forum doctrine.

Plaintiffs argue that there are cases that have created a "right of access" (Pl. Mem. Opp. Mot. Dismiss, p. 32), but these cases are not persuasive for obvious reasons. *PruneYard Shopping*, which upheld a right to protest in a private shopping center in California, relies entirely on the California Constitution, not the First Amendment to the U.S. Constitution, which the court acknowledged "does not *ex proprio vigore* limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980).   Plaintiffs in the instant case make no claim under any state constitution that acknowledges such a "right of access" to a private event, and the First Amendment does not include one. *Id.*

Plaintiffs also cite *Marsh v. Alabama*, 326 U.S. 501 (1946), which upheld a right to leaflet in a company town (Pl. Mem. Opp. Mot. Dismiss n, p. 48), but did so on very limited grounds: because that town had assumed "'all the attributes' of a municipality." *Lloyd Corp.,*

*Ltd. v. Tanner*, 407 U.S. 551, 563 (1972) (citing *Marsh v. Alabama*, 391 U.S. 501, 508 (1946)).

Defendant CPD's debates here have not wrested any traditional function of the government,

much less "all the attributes" and, further, *Lloyd Corp* makes clear that the bar for a *Marsh*

designation is a very high one. *Id.* at 562. ("The Court [in *Marsh*] simply held that where private

interests were substituting for and performing the customary functions of government, First

Amendment freedoms could not be denied where exercised in the customary manner on the

town's sidewalks and streets. Indeed, as title to the entire town was held privately, there were no

publicly owned streets, sidewalks, or parks where such rights could be exercised.") (citing *Marsh*

*v. Alabama*, 326 U.S. 501, 502 (1946)).  In the instant matter, there are plenty of alternate

channels for Plaintiffs to disseminate their messages.  With the advent of the digital age there has

never been a time in which candidates and parties have so many ways and forums to effectively

reach millions of voters. Bradley A. Smith, *Unfree Speech* 148 (Princeton University Press 2001)

("With minimal capital and training, one can sit at a computer and, within minutes... email the

material off to thousands of individuals with a few strokes of the keyboard.").  Plaintiffs simply

do not believe that these alternate channels are good enough because the major party candidates

would not participate, so relatively few members of the public would be interested.  Plaintiffs do

not have a right to have major party candidates prop them up by forcing them to debate.

5.  **Plaintiffs' "Right of Access" Claim Necessitates Compelled Participation by Defendants Romney and Obama Which is Forbidden by the First Amendment.**

Plaintiffs' claims that they are entitled to participate in the CPD debates presuppose that

the major parties and their candidates will take part.  This would require a court order compelling

the major party candidates to debate them.  Plaintiffs attempt to hide this intention by contending

that they would accept a scenario in which there were no presidential debates at all (Pl. Mem.

Opp. Mot. Dismiss, p. 41), but the First Amendment's protections would be similarly harmed by

an injunction preventing the major party candidates from debating without also inviting minor party candidates. This is because such a result is patently inconsistent with the right of association.

The Supreme Court has long recognized that the speech clause of the First Amendment implies an individual's right to decide with whom he or she will associate. *Moore v. City of East Cleveland*, 431 U.S. 494, 535 (1977) ("Freedom of association has been constitutionally recognized because it is often indispensable to effectuation of explicit First Amendment guarantees."). This right has been held to attach to political actors. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214 (1986) ("The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization.") These political actors have the right to "promote among the electorate candidates who espouse their political views." *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). As speakers engaged in politics where the First Amendment's protections are at their zenith, Defendants are, therefore, free to refuse association on the debate stage with minor party candidates and debate only those who meet the CPD's objective threshold of public support for participation.

To decide in Plaintiffs' favor, which would involve the issuance of a court order either forcing Defendants to appear on stage to debate minor party candidates, or enjoining Defendants from appearing on stage without minor party candidates, would run afoul of settled precedents rejecting compelled association. *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) ("The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects, in a significant way, the group's ability to advocate public or private viewpoints.") Defendants would be significantly hampered in their ability to advocate their viewpoints on the debate stage if the CPD were forced to include minor

party Plaintiffs because their presence would distract from the messaging clarity of having the standard-bearer candidates representing opposite sides of the ideological spectrum spar on the major issues of the day. It would additionally severely inhibit the ability of the two major party candidates, through their statements and responses, to define and disseminate their electoral messages about themselves and their major-party opponent.

Defendants have the right not to be forced to carry minor party Plaintiffs' messages by including them on the CPD debate stage. *Rumsfeld v. Forum for Academic & Institutional Rights*, 547 U.S. 47, 61 (2006) ("Some of [the] Court's leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say"); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("Right of freedom of thought protected by First Amendment against state action includes both right to speak freely and right to refrain from speaking at all."). The right to decide with whom one will speak is the critical component of association. *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1996) ("implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.") Defendants Obama and Romney participated in the CPD debates because they desired to speak together as candidates who have met the CPD's objective threshold of support in order to highlight their positions during the presidential election, and this right is protected against unwanted interference – even if it comes in the form of a disguised antitrust claim.

## B.  PLAINTIFFS' ANTITRUST CLAIMS ARE MERITLESS.

Plaintiffs' claim that their case is one of first impression (Pl. Mem. Opp. Mot. Dismiss, p. 1), and use that conclusion to attempt to distinguish the body of cases which have held –

unambiguously – that political activity is not subject to federal antitrust laws.  They attempt to distinguish the *Noerr-Pennington* line of cases on the grounds that these cases do not fit the precise parameters of the square peg they have constructed to fit into the round hole they have also constructed.  This attempt ultimately fails.  The antitrust laws simply do not apply to political activity, including legislative activity, political boycotting activity, political broadcasting, campaign finance, and yes, presidential debates.

The Plaintiffs' Section 1 claim - conspiracy to restrain trade using the rule of reason standard – and their Section 2 monopolization claim fail for the same reasons—that the Sherman Act does not apply to political activities, that the actions alleged are protected by the First Amendment, and that the relief requested is precluded by the First Amendment.   On the Section 1 conspiracy claim, the "conspiracy"—banding together for political speech—is a core associational right. *Tashjian*, *supra,* 479 U.S. at 214.  Moreover, far from being an indicator of unlawful activity, an *agreement* is necessary for the debate to happen at all because a debate requires at least two participants. *National Collegiate Athletic Ass'n. v. Board of Regents,* 468 U.S. 85, 98 (1984) ("every contract is a restraint of trade, and as we have repeatedly emphasized, the Sherman Act was intended to prohibit only unreasonable restraints of trade.").

With regard to the Section 2 claim, as we note at pp. 4 and 6, *supra*, there is nothing preventing the Plaintiffs from holding their own debate, and any judicial requirement that they be included in debates with the major party candidates would fly in the face of *Tornillo*, *Hurley*, and *Sistrunk*.  The Plaintiffs' Section 2 claim has evolved into an "essential facilities" claim, which we discuss at p. 20, *infra*.

1.      **Plaintiffs Seek to Adjudicate Speech Rights, Not Economic Injury.**

The *Noerr-Pennington* cases make clear that antitrust law does not apply to political activity. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961) ("To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act.") Plaintiffs cannot cite a single case in which core political speech or the act of expressive association is considered a "business" for the purposes of federal antitrust law, or for any other purpose, for that matter.  This is because it is not.

2.      ***Tornillo*, A Case Plaintiffs Do Not Mention, Distinguishes *Associated Press*, the Case On Which Plaintiffs Found Their Antitrust Claim.**

Plaintiffs criticize Defendants' analysis of antitrust issues for failure to cite *Associated Press v. United States,* 326 U.S. 1 (1945) (Pl. Mem. Opp. Mot. Dismiss n, p. 31).  Yet, Plaintiffs fail to explain how *Associated Press* controls this case beyond the cursory observation that it involved the application of antitrust law to facts involving traditional First Amendment actors. Indeed, the *Tornillo* court cited *Associated Press* for the proposition that there is no "right of access" to a private party's speech, which forecloses Plaintiffs' position. 418 U.S. at 253. ("An enforceable right of access necessarily calls for some mechanism... If it is governmental coercion, this at once brings about a confrontation with the express provisions of the First Amendment and the judicial gloss on that Amendment developed over the years.")  Thus, the Supreme Court has already rejected the transformation of the "First Amendment as a sword" principle into a lever to ensure access as Plaintiffs request here.

Further, the *Tornillo* court even marked *Associated Press* as the starting point for its protection of First Amendment rights associated with government-enforced access to the media. *Id.* at 254. ("There it carefully contrasted the private 'compulsion to print' called for by the Association's bylaws with the provisions of the District Court decree against appellants which 'does not compel AP or its members to permit publication of anything which their 'reason' tells them should not be published.'")   In the instant matter, Defendants do not wish to "publish" Plaintiffs' views by including them on the debate stage, and these precedents make it clear that the government may not compel them to do so.  Further guidance may be gained by the *Tornillo* court's recount of this history of protecting First Amendment rights of speech and association against governmental direction. *Id.* at 253. ("The power of a privately owned newspaper to advance its own political, social, and economic views is bounded by only two factors: first, the acceptance of a sufficient number of readers—and hence advertisers—to assure financial success; and, second, the journalistic integrity of its editors and publishers.") (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).

Plaintiffs place a great deal of emphasis on *Associated Press* as evidence that First Amendment actors may be subject to antitrust regulation, but very conveniently ignore that Justice Black's opinion specifically limited the holding to business activity. 326 U.S. 1, 28. ("The press *in its commercial aspects* is also subject to the regulation of the Sherman Law"). (Emphasis added.) The Supreme Court in *N.A.A.C.P. v. Claiborne Hardware*, 458 U.S. 886, 931 (1982), additionally made clear that First Amendment activities are beyond the reach of the antitrust laws. (Refusing to hold civil rights boycott organizers liable under state antitrust law for damages caused during boycott because to do so would "impermissibly burden the rights of political association that are protected by the First Amendment.")

Plaintiffs' reliance on *Associated Press* is therefore in error.  Although Plaintiffs attempt to argue that *Associated Press* broadly allows the application of antitrust law to political actors, they fail to mention that such a reading has been foreclosed by the *Tornillo* court's rejection of a "right of access" which specifically distinguishes *Associated Press*.

Plaintiffs additionally cite *F.T.C v. Superior Court Trial Lawyers Ass'n* and other cases that involve First Amendment actors (Pl. Mem. Opp. Mot. Dismiss, p. 37), but that also make it clear that it is commercial activity, not speech activity, that is regulated by federal antitrust law. 493 U.S. 411, 426 (1990) ("Unlike the boycott upheld in *Claiborne Hardware*, the undenied objective of this boycott was to gain an economic advantage for those who agreed to participate.") These cases hold that an activity is beyond the reach of antitrust law by reason of the First Amendment when the purpose of the activity is to disseminate a political message, rather than to generate profits. *Id.*  The purpose of the CPD debates is obviously not to make money, but to showcase the major party candidates and highlight their electoral messages and positions on the issues of the campaign.   Cases routinely hold that debate organizers may rightfully exclude candidates based on their evaluation of which is most salient in the national conversation.   *Arkansas Educational Television Commission, supra*, 523 U.S. 666 (1998) (finding that a state actor broadcaster's exclusion of candidate for lack of electoral support was reasonable).  Although Plaintiffs attempt to couch their arguments in monetary terms, they target the speech and association elements of presidential debates, not the business elements, and therefore such claims are not the proper subject of an antitrust action.

### 3.      Plaintiffs' Section 1 Claim Fails the Rule of Reason Test.

Significantly, Plaintiffs now concede that this is a rule of reason case, not a per se case as they originally argued (Pl. Mem. Opp. Mot. Dismiss, p. 45): "Plaintiffs intend to rely on a Rule

of Reason standard to prove a Section 1 violation…"). The elements of the agreement—that the major party nominees will debate each other and not the minor party candidates—is reasonable as a matter of law because that decision is protected by the First Amendment.

As in every other area of antitrust law, the Supreme Court has been careful to distinguish the commercial elements of activity from the protected First Amendment elements for purposes of the rule of reason.  In *National Society of Professional Engineers v. U.S.*, 435 U.S. 679 (1978), the court held that a statement in a professional association's published standards of ethics that competitive bidding was unethical could be subject to an injunction pursuant to the rule of reason notwithstanding that First Amendment rights were involved, but in doing so made clear that it was not the First Amendment activity that was unreasonable.  Instead, the court stated that the antitrust violation was the members' "agreement to refuse to discuss prices with potential customers until after negotiations have resulted in the initial selection of an engineer." *Id.* at 692.  Similarly, in *Lorain Journal Co. v. U.S.*, 342 U.S. 143, 152, 155 (1951) the court held that a newspaper's actions in forcing advertisers to boycott the paper's competitors was subject to antitrust regulation because the journalistic exclusion of ads for failing to adhere to the boycott was an attempt to monopolize the industry, not the exercise of a First Amendment right.  In the instant matter, Plaintiffs attempt to target Defendants' First Amendment activity in debating the candidates of their choice, not any commercial activities in restraining competition for debate venues, media agreements, etc.

### 4.   Plaintiffs' Antitrust Claims Fail the "Essential Facilities" Test.

Plaintiffs' attempt to characterize the CPD debates as "essential facilities" is also unpersuasive.  Some of the early decisions on which the "essential facilities" theory is based were "group boycott" cases arising out of Section 1 of the Sherman Act (See, *e.g., U.S. v.*

*Terminal R.R.*, 224 U.S. 383 (1912) and *Associated Press v. United States*, 326 U.S. 1 (1945)). To the extent Plaintiffs are using the "essential facilities" designation to enhance their group boycott claim under Section 1, it fails for the reasons discussed above: the major party nominees and the CPD have a First Amendment right to associate and debate with whomever and on whatever terms they choose.

If Plaintiffs are invoking the "essential facilities" designation to explain their Section 2 claim, it also fails. Even putting aside the determinative First Amendment issues, an "essential facility" must be "essential," not merely desirable, unique, or superior. Indeed, this Circuit requires that the CPD be a "monopolist" and that use of the facility be indispensable for competition, neither of which is true in the instant matter. *Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998). Additionally, an "essential facility" is generally conceived to be a non-replicable hard asset—a train station, a telephone interconnection, a sports stadium, or an airline computer reservation system—not an activity. See *Olympia Equipment Leasing v. Western Union Tel. Co.*, 797 F.2d 370, 377-78 (7th Cir. 1987) (Posner, J.) (rejecting claim that Western Union's sales force was an "essential facility").

Some courts have used the term "essential facilities" in challenges to single-firm conduct under Section 2. It is worth noting that the Supreme Court has "never recognized such a doctrine." *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 411 (2004). It is generally the rule that a competitor need not aid a competitor, and that a competitor may use even its superior facilities for its own competitive advantage. *See id.* at 407-08 (forced sharing of a competitive advantage "is in some tension with the underlying purpose of antitrust law, since it may lessen the incentive for the monopolist, the rival, or both to invest in those economically beneficial facilities."). Even without First Amendment concerns, forced

sharing of facilities "requires antitrust courts to act as central planners… a role for which they are ill-suited." *Id.* Adding in the First Amendment implications of judicial intervention, it is plainly inappropriate to apply the "essential facilities" theory here.

If this court assumed the applicability of the "essential facilities" theory to the facts of this case, the classic statement of that theory is in *MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1132 (7th Cir. 1983), which sets forth four elements of an "essential facilities" claim: "(1) control of the essential facility by a monopolist; (2) a competitor's inability practically or reasonably to duplicate the essential facility; (3) the denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." Even assuming Plaintiffs could properly allege the first and third elements, they cannot allege the second and fourth as a matter of law.

With regard to the second criterion, the "facility" is replicable because Defendants have no monopsony on chairs, microphones, sound equipment, venues, or any other component of a debate. Therefore, Plaintiffs can stage (and, indeed, they have staged) their own debates. However, those debates have not garnered the public attention that debates between the major party candidates receive, which is what Plaintiffs truly seek. The only components of the major candidate debates that could possibly make them "essential" are the participation of the major party candidates and the extensive media coverage. Both of those components are beyond this court's power to guarantee for First Amendment reasons discussed *supra.*

With regard to the fourth criterion, it is not feasible for the CPD to provide Plaintiffs access to the "essential facility" because CPD does not control the major party candidates and, therefore, cannot guarantee their participation in a debate that included the Plaintiffs. Hundreds of candidates run for the presidency each cycle, and the major party candidates obviously cannot

debate all of them.  Plaintiffs' attempt to address this concern by proposing to include only those candidates who qualify for enough state ballots to theoretically reach 270 electoral votes. (Complaint, p. 47) (Plaintiffs seek "an injunction against any further boycott or other agreement in restraint of trade between the RNC and the DNC, or any of their candidates or their agents, or involving the Commission that would exclude from presidential debates candidates who have obtained sufficient state ballot access to win an electoral-college majority."). This would require a candidate to qualify for the ballot in as few as 11 states.  Such a low bar for access does not even limit the number of candidates who can qualify and, therefore, force the CPD to allow them on stage.  This could incentivize more political parties to form and more prospective candidates to launch signature-gathering campaigns in states to reach the "mathematical possibility" threshold.   Such an effort could result in "splintered parties and unrestrained factionalism" and would make debates impossible to administer. *Storer v. Brown*, 415 U.S. 724, 736 (1974). Additionally, the arbitrariness of the Plaintiffs' proposed threshold carries with it the virtual certainty that a ruling in their favor would invite other fringe parties and candidates to bring similar challenges against the CPD or other debate organizers.  This appellate circuit has adhered to the position that "essential facilities" claims should be rejected if providing access would be impractical, as it is here. *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 992-93 (D.C. Cir. 1977).

Plaintiffs make repeated reference to the CPD presidential debates as "the Super Bowl of politics" and, therefore, necessary to their political legitimacy as reason to label it an "essential facility."  Putting aside the business/politics distinction in the law, this reference is humorous because the Super Bowl is a competition between the two, and only two, most successful teams in a given year.  Indeed, an NFL team that failed to qualify for the Super Bowl cannot possibly expect to obtain a court order forcing the two teams that are playing in the Super Bowl to allow

them onto the field, any more than Plaintiffs can expect to obtain a court order forcing the CPD to allow them onto the debate stage.  Perhaps competing in a Super Bowl is "essential" to the legitimacy of an NFL team.  However, this does not entitle the team to access to the Super Bowl unless they have qualified pursuant to NFL rules.  Similarly, Plaintiffs are not entitled to participate in the CPD's presidential debates without attaining the 15% threshold set by the organization.

## C.   PLAINTIFFS' INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM FAILS FOR WANT OF CLARITY

Plaintiffs continue to ignore Defendants' observation that the economic advantages to which Plaintiffs assert an expectation are speculative at best, which forecloses their claim. *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 56 (D.D.C. 2011). Plaintiffs by their own admission have never met the CPD's objective threshold of public support for participation in presidential debates, which makes it difficult to see how they have formed an expectation of reaping any benefits associated with debate participation.  Indeed, Plaintiffs have not supported their intentional interference claim with any facts or authority whatsoever that would amount to a plausible showing that, absent Defendants' actions in organizing and conducting debates, any new vendors, contributors, sponsors, or media outlets would be interested in forming relationships with Plaintiffs. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1134 (D.C. Cir. 2015) ("A business expectancy 'must be commercially reasonable to anticipate" before its loss may be actionable') (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).)  As with Plaintiffs' other antitrust claims, the application of business tort law to Defendant CPDs' presidential debates would violate the First Amendment, which is why it has never been interpreted to regulate political activity.

**D.     PLAINTIFFS HAVE NOT PLED FACTS THAT PLAUSIBLY ENTITLE THEM TO RELIEF UNDER THE ANTITRUST LAWS.**

Plaintiffs have not met the *Iqbal* standard in order to move forward in this action.  All of their claims have been inescapably foreclosed by existing precedent.  These precedents, as Defendant RNC has shown, come in two varieties: (1) First Amendment cases that reject a "right of access," and (2) antitrust cases that reject regulation of political activity.  Although Plaintiffs attempt to convince this court that the instant action should survive a motion to dismiss because its novel and strained legal claims have not been addressed down to the most specific detail, it is clear that a ruling in their favor would be inconsistent with law well-settled by the Supreme Court.  Because of the clarity of existing law, Plaintiffs' complaint does not even provide the threshold showing of "more than sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is time to dismiss this action with prejudice.

## III.

## CONCLUSION

For the foregoing reasons, Defendant RNC's motion to dismiss should be granted.

Dated:  May 2, 2016.                                      Respectfully submitted,


By: _____/s/_____
            Charles H. Bell, Jr.
            *cbell@bmhlaw.com*
            **BELL, McANDREWS & HILTACHK, LLP**
            455 Capitol Mall, Suite 600
            Sacramento, CA  95814
            Tel:  (916) 442-7757
            Fax: (916) 442-7759

            John R. Phillippe, Jr.
            *jphillippe@gop.com*
            **REPUBLICAN NATIONAL COMMITTEE**
            310 First Street, SW
            Washington, DC 20003
            Tel:  (202) 863-8638
            Fax:  (202) 863-8654

            *Attorneys for Defendant*
            *REPUBLICAN NATIONAL COMMITTEE*

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2016, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served the CM/ECF system.

Dated:  May 3, 2016.                           Respectfully submitted,


By: /s/ _____
Charles H. Bell, Jr.
*cbell@bmhlaw.com*
**BELL, McANDREWS & HILTACHK, LLP**
455 Capitol Mall, Suite 600
Sacramento, CA  95814
Tel:  (916) 442-7757
Fax: (916) 442-7759

John R. Phillippe, Jr.
*jphillippe@gop.com*
**REPUBLICAN NATIONAL COMMITTEE**
310 First Street, SW
Washington, DC 20003
Tel:  (202) 863-8638
Fax:  (202) 863-8654


*Attorneys for Defendant*
*REPUBLICAN NATIONAL COMMITTEE*