# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Gary E. Johnson; Gary Johnson 2012, Inc.; Libertarian National Committee; James P. Gray; Green Party of the United States; Jill Stein; Jill Stein for President; and Cheri Honkala, <br><br>   Plaintiffs, <br><br> v. <br><br>Commission on Presidential Debates; Republican National Committee; Democratic National Committee; Frank J. Fahrenkopf, Jr.; Michael D. McCurry; Barack Obama; and Willard Mitt Romney, <br><br>   Defendants. | Civil Action No. 1:15-CV-01580-RMC |

## DEFENDANT WILLARD MITT ROMNEY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

        Noel J. Francisco
        James M. Burnham
        JONES DAY
        51 Louisiana Ave, N.W.
        Washington, D.C. 20001
        (202) 879-3939

        *Counsel for Defendant Willard Mitt Romney*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ............................................................................................................................... 1
ARGUMENT ...................................................................................................................................... 1
    I.     Plaintiffs Cannot Square Their Antitrust Claims With The First Amendment ..................... 1
    II.    Plaintiffs' First Amendment Claim Fails .............................................................................. 4
CONCLUSION .................................................................................................................................... 5

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Associated Press v. United States*,
   326 U.S. 1 (1945) .................................................................................................. 2, 3

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
   515 U.S. 557 (1995) ................................................................................................ 1

*Marsh v. Alabama*,
   326 U.S. 501 (1946) ................................................................................................ 4

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ................................................................................................ 1

*Rumsfeld v. Forum for Acad. and Individual Rts., Inc.*,
   547 U.S. 47 (2006) .................................................................................................. 3

*Shelley v. Kramer*,
   334 U.S. 1 (1948) ................................................................................................ 4, 5

*Terry v. Adams*,
   345 U.S. 461 (1953) ................................................................................................ 4

**OTHER AUTHORITIES**

*Video: Gary Johnson on Why He's Suing the Commission on Presidential
   Debates*, Independent Political Report, http://goo.gl/rzXAHq ............................... 1

INTRODUCTION

Far from being a legitimate attempt to break apart an insidious monopoly, this case is a publicity stunt that seeks to boost Gary Johnson's current campaign for the presidency at great expense to Governor Romney, the other defendants, and this Court. Mr. Johnson has been quite open about that fact, declaring at a campaign rally that he is "suing the Presidential Debate Commission" in order to "see a discovery phase" that he hopes will be "nationally entertaining." *See Video: Gary Johnson on Why He's Suing the Commission on Presidential Debates*, at 0:10-0:12, 1:19-1:26, The Independent Political Report, http://goo.gl/rzXAHq.  This Court should not permit Plaintiffs to prolong this process, obtain discovery for the purpose of "national entertainment," impose additional legal costs on the Defendants, and, most troublingly, deploy the powerful weapon of civil litigation on the field of political combat. Political debates should be had in the public sphere, not in federal court. This Court should thus apply basic antitrust and constitutional principles and dismiss the claims against Governor Romney in full and with prejudice for the reasons in his filings as well as those in the filings of his co-defendants, all of which he adopts in full.

ARGUMENT

I. **Plaintiffs Cannot Square Their Antitrust Claims With The First Amendment.**

It is black letter constitutional law that the First Amendment protects the "freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). That protection is at its apex in the context of political candidates seeking to persuade voters to support their candidacies through public debates that those candidates voluntarily engage in. *See, e.g., Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573 (1995). And that core protection plainly protects Governor Romney's right as a political candidate to refuse to participate in any presidential debate that features any presidential candidate he does not wish to associate with.

Congress has not empowered (and could not empower) federal courts to issue injunctions or award damages based on the expressive activities of political candidates.

Plaintiffs disagree, relying chiefly on *Associated Press v. United States*, 326 U.S. 1 (1945), which holds that the First Amendment does not bar antitrust laws that prohibit the news *business* from engaging in monopolistic practices that disadvantage certain *companies* who are trying to *sell* newspapers. That case is, in other words, about commercial efforts "to *restrain trade* in news," *id.* at 20 (emphasis added)—not political efforts to promote one's candidacy at the expense of one's political competitors. Candidates pitching their ideas in exchange for votes are obviously different from corporations selling newspapers for money. The former is politics, while the latter is commerce. The former is not part of the Sherman Act, as Plaintiffs deafeningly confirm by failing to cite a single decision in that Act's century-long history applying it to political candidates.

Moreover, aside from that fundamental difference in subject matter, the conduct Plaintiffs are asking this Court to require of Governor Romney is quite different from the conduct the plaintiffs in *Associated Press* were demanding. Here, Plaintiffs are asking this Court to hold that Governor Romney had a legal obligation under the federal antitrust laws to engage in public debates—and thus public political association—with candidates he wished to avoid. If that is correct, then that requirement would apply not only to Gary Johnson and Jill Stein, but to David Duke, George Wallace, or any other fringe candidate seeking public office. Requiring President Obama or Governor Romney to debate neo-nazis and segregationists would impose an extraordinary burden on their rights of political expression and association—rights that entitle President Obama and Governor Romney to refuse to even be in the same *city* as David Duke, let alone *standing next to him on a debate stage*. Whether or not viewers would think that President

Obama and Governor Romney "endorse the views" of David Duke when they debate him (Opp. 33, ECF No. 45), there is no question that forcing the two top candidates for the presidency to debate David Duke conscripts those candidates' prestige and personalities in service of elevating a person whom they find odious and reprehensible. That burden is entirely different from requiring the Associated Press to give news organizations access to its information; it is, rather, akin to requiring Associated Press reporters to write editorials praising the Nazi Party whenever they decide to write editorials praising the two mainstream political parties. It would provide little comfort to the outraged editorial writer that he or she is free to append a disclaimer to the editorial noting that it "was required by federal law" (*id.*), which is, no doubt, why no court has ever even hinted that such a patently unconstitutional requirement could be permissible.

For that same reason, Plaintiffs' citation to various cases that require commercial enterprises or federally subsidized universities to provide access to entities with particular viewpoints is misplaced. *Id*. at 32-34. Those cases stand for the unobjectionable principle that shopping malls or schools who provide "equal access" are not supporting, engaging with, or in any way "sponsor[ing]" the speech to which they supply access. *Rumsfeld v. Forum for Acad. and Individual Rts., Inc.*, 547 U.S. 47, 65 (2006). But Plaintiffs seek far more than that. They seek not only the right to appear in a particular place—they seek the right to force Governor Romney to talk to them, respond to their arguments, and otherwise engage with their political viewpoints. That would be like the federal government in *F.A.I.R.* demanding that the President of Harvard University spend a day engaging in a public debate with a military recruiter about the pros and cons of "Don't Ask, Don't Tell." Nothing in the Supreme Court's opinion (or constitutional commonsense) would allow that extraordinary imposition on Harvard University's and its President's rights to speak (or not speak) and associate (or not associate).

In short, Plaintiffs cannot overcome the fundamental constitutional problem with their claims. Unlike any case in history—whether under the Sherman Act or the First Amendment—Plaintiffs are asking this Court to force political candidates to enter into a particular political association. Plaintiffs' attempt to deploy the antitrust laws in that unconstitutional crusade would, if permitted, be a recipe for endless litigation by sore political losers, or, as here, for attention-seekers trying to convert civil litigation into a soapbox for spreading their political message. This Court should construe the Sherman Act to avoid this constitutional problem, or, if it determines such a construction is not possible, hold the Sherman Act unconstitutional as applied to Governor Romney.

## II. Plaintiffs' First Amendment Claim Fails.

Plaintiffs recognize (1) that stating a First Amendment claim requires state action, and (2) that none of the defendants are state actors. Opp. 48. They offer two responses to that seemingly insuperable barrier, both of which fail. *First*, Plaintiffs invoke a handful of cases from the 1940s and 1950s in which the Supreme Court recognized that the Constitution can apply to private entities when those entities are the *de facto* government, such as a company town wherein a corporation completely controls and governs a community, *Marsh v. Alabama*, 326 U.S. 501 (1946), or a private election that serves as the real election that will actually control the selection of local officeholders, *Terry v. Adams*, 345 U.S. 461 (1953). Opp. at 48-51. Those cases are irrelevant here, as Governor Romney has not asserted any formal or informal control over Gary Johnson, Jill Stein, or anybody else. Governor Romney never acted as "the government" in any relevant sense. He is thus not subject to constitutional constraints on what governments can do.

*Second*, Plaintiffs analogize the agreement between President Obama and Governor Romney on the terms of their bilateral debate to the racially restrictive covenants at issue in *Shelley v. Kramer*, 334 U.S. 1 (1948). Opp. at 49-50. But state action in that case was supplied

by judicial enforcement of the covenants. *See Shelley*, 334 U.S. at 14 ("[T]he action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment…."). And the Supreme Court's remedy was not—as Plaintiffs seek here—to enjoin private parties from entering such covenants or to impose damages because of them; it was, rather, to forbid *enforcement* of those covenants by *actual* state actors (the courts). As the Supreme Court put it, the "Constitution confers upon no individual the right to demand *action by the State* which results in the denial of equal protection of the laws to other individuals." *Id.* at 22 (emphasis added).

*Shelley* nowhere suggested the existence of some free-floating constitutional requirement that (sometimes) limits private people the same way the Constitution restricts governments. Nor did Governor Romney ever try to enforce his Memorandum of Understanding with President Obama, or seek judicial enforcement of anything against Plaintiffs. Rather, he simply declined to appear alongside them. There is thus no state action, as *Shelley* confirms.[1]

## CONCLUSION

Governor Romney fully agrees that "form should not be exalted over substance where, as here, fundamental or preferred constitutional rights are at stake." Opp. 51. Plaintiffs do not have a "fundamental" or "preferred" constitutional right to a public platform where they can address, debate, hector, or attack particular political candidates. They are free to chase Governor Romney around the country challenging him to debates. But they are not entitled to enlist the federal judiciary in that crusade—no matter how many times they deploy rhetorical formulations such as the "business of politics" or the "marketplace of ideas"—all of which *do* exalt the "form" of

---

[1] Governor Romney noted in his Memorandum of Law in Support of Motion to Dismiss at page 7 that Plaintiffs have not alleged their "intentional interference" claim against him—a point they do not dispute. Opp. 54-55. For that reason, too, this claim should be dismissed as to him.

words over the "substance" of what Plaintiffs are actually asking this Court to do. The reality is that, contrary to Plaintiffs' grandiose claims, the right to debate Mitt Romney is not "guaranteed by the Constitution," Opp. 31, the Sherman Act, or anything else. Whom political candidates choose to debate is governed today—as it has always been—by the democratic constraints of popular will. Plaintiffs' Complaint should be dismissed with prejudice.

Dated: May 3, 2016                                          Respectfully submitted,

/s/ James M. Burnham
Noel J. Francisco (D.C. Bar 464752)
James M. Burnham (D.C. Bar 1015196)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com
jmburnham@jonesday.com

*Counsel for Defendant Willard Mitt Romney*

## **CERTIFICATE OF SERVICE**

      I, James M. Burnham, am a member of the Bar of this Court.  I hereby certify that on this 3rd day of May, 2016, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on all registered users.

Dated: May 3, 2016                                 Respectfully submitted,

                                                         /s/ James M. Burnham
                                                         James M. Burnham (D.C. Bar 1015196)
                                                         Jones Day
                                                         51 Louisiana Avenue, N.W.
                                                         Washington, DC 20001
                                                         (202) 879-3939
                                                         jmburnham@jonesday.com

                                                         *Counsel for Defendant Willard Mitt Romney*