## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gary E. Johnson; Gary Johnson 2012, Inc.; Libertarian National Committee; James P. Gray; Green Party of the United States; Jill Stein; Jill Stein for President; and Cheri Honkala, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:15-CV-01580-RMC |
| v. | ) ) | |
| Commission on Presidential Debates; Republican National Committee; Democratic National Committee; Frank J. Fahrenkopf, Jr.; Michael D. McCurry; Barack Obama; and Willard Mitt Romney, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANTS COMMISSION ON PRESIDENTIAL DEBATES, FRANK J. FAHRENKOPF, JR. AND MICHAEL D. MCCURRY'S REPLY IN SUPPORT OF MOTION TO DISMISS

Lewis K. Loss
Uzoma N. Nkwonta
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099

*Attorneys for Defendants*
*Commission on Presidential Debates, Frank J.*
*Fahrenkopf, Jr., and Michael D. McCurry*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 4

I.     Plaintiffs Have Failed to Demonstrate Article III or Antitrust Standing. ........................... 4

     a.   No Article III Standing:  Plaintiffs have not identified any allegations that establish an injury-in-fact that is non-speculative and traceable to the CPD. ............. 4

     b.   No Antitrust Standing: Plaintiffs have not alleged any antitrust injury because their allegations focus solely on individualized injuries to their campaigns, but fail to identify any market-based harm. ............................................................... 6

II.    Plaintiffs' Opposition Disregards the Plain Language of the Sherman Act and Well-Settled Law Which Establishes that Federal Antitrust Laws Do Not Regulate Political Activity. ........................................................................................ 8

III.   Plaintiffs' Attempt to Have this Court Dictate Candidate Selection Criteria for Presidential Debates Would Restrict Political Speech and Trample the CPD's First Amendment Rights. ..................................................................................... 11

IV.   Plaintiffs' Allegations Fail to State a Claim Under the Sherman Act. ............................ 13

     a.   Plaintiffs' conspiracy allegations are implausible and defy common sense. ............. 13

     b.   Plaintiffs cannot state a claim under the rule of reason because the CPD's criteria are reasonable and necessary for the production of debates involving leading candidates. ........................................................................................... 16

V.     The First Amendment Does Not Restrict the Defendants' Conduct. ............................... 19

VI.   Plaintiffs Fail to Respond to Defendants' Motions to Dismiss their Intentional Interference Claim and Have Not Identified Any Specific Business Opportunities to Support their Claim. ........................................................................................ 22

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

### Federal Cases

*Agnew v. NCAA,*
  683 F.3d 328 (7th Cir. 2012) ................................................................. 17

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
  486 U.S. 492 (1998) ............................................................... 9, 10, 11

*Am. Inst. of Certified Public Accountants v. I.R.S.,*
  804 F.3d 1193 (D.C. Cir. 2015) .............................................................. 6

*\*American Needle, Inc. v. National Football League,*
  560 U.S. 183 ........................................................................... 16

*\*Arkansas Educational Television Commission v. Forbes,*
  523 U.S. 666 (1998) ........................................................... 3, 11, 17

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ..................................................................... 7

*Associated Press v. U.S.,*
  326 U.S. 1 (1945) ...................................................................... 12

*\*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................... 14, 16, 20

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.,*
  441 U.S. 1 (1979) ...................................................................... 16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977) ..................................................................... 6

*Buchanan v. Fed. Election Comm'n,*
  112 F. Supp. 2d 58 (D.D.C. 2000) ..................................................... 3, 18

*Buckley v. Valeo,*
  424 U.S. 1 (1976) .................................................................. 21, 22

*Citizens United v. Federal Election Commission,*
  558 U.S. 310 (2010) .................................................................... 11

*Common Cause/Georgia v. Billups,*
  554 F.3d 1340 (11th Cir. 2009)........................................................... 8

*DataCell ehf v. Visa, Inc.,*
  2015 WL 4624714 (E.D. Va. July 30, 2015) ................................................ 8

*\*DeBauche v. Trani,*
  191 F.3d 499 (4th Cir. 1999)........................................................... 20

*Delta Const. Co., Inc. v. E.P.A.,*
783 F.3d 1291 (D.C. Cir. 2015) ........................................................................... 2, 6

*Drake v. Cox Commc'n,*
2011 WL 2680688 (D. Kan. July 8, 2011) ................................................................... 8

*\*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ........................................................... 8, 9, 10, 11, 13

*Flagg Bros., Inc. v. Brooks,*
436 U.S. 149 (1978) ........................................................................................ 19

*Federal Election Comm'n v. Wisconsin Right To Life, Inc.,*
551 U.S. 449 (2007) ........................................................................................ 20

*Federal Trade Commission v. Superior Court Trial Lawyers Ass'n (SCTL)*
493 U.S. 411 (1990) .................................................................................... 9, 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000) .......................................................................................... 5

*\*Fulani v. Brady,*
729 F. Supp. 158 (D.D.C. 1990) .................................................................... 2, 5

*\*Fulani v. Brady,*
935 F.2d 1324 (D.C. Cir. 1991) ........................................................... 5, 15, 17

*Guttenberg v. Emery,*
41 F. Supp. 3d 61 (D.D.C. 2014) ................................................................... 22

*\*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
515 U.S. 557 (1995) ........................................................................................ 13

*Jackson v. Metropolitan Edison Co.,*
419 U.S. 345 (1974) ........................................................................................ 19

*\*Johnson v. F.C.C.,*
829 F.2d 157 (D.C. Cir. 1987) ........................................................... 13, 21, 22

*K & R Leasing Corp. v. Gen. Motors Corp. Oldsmobile Div.,*
551 F. Supp. 842 (N.D. Ill. 1982) ................................................................. 18

*Loren v. Sasser,*
309 F.3d 1296 (11th Cir. 2002) ..................................................................... 22

*Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Schs., Inc.,*
432 F.2d 650 (D.C. Cir. 1970) ....................................................................... 11

*Marsh v. State of Ala.,*
326 U.S. 501 (1946) .................................................................................... 19, 20

*McCormack v. NCAA,*
   845 F.2d 1338 (5th Cir. 1988) ................................................... 17

*McCutcheon v. Fed. Election Comm'n,*
   134 S.Ct. 1434 (2014) ............................................................... 12

*Metro Cable Co. v. CATV of Rockford, Inc.,*
   516 F.2d 220 (7th Cir. 1975) ...................................................... 9

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of,*
   468 U.S. 85 (1984) .................................................................... 19

*Perot v. Fed. Election Comm'n,*
   97 F.3d 553 (D.C. Cir. 1996) ..................................................... 11

*Phillips Getschow Co. v. Green Bay Brown County Prof'l Football Stadium Dist.,*
   270 F. Sup. 2d 1043 (E.D. Wisc. 2003) ....................................... 7

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.,*
   2007 WL 1007968 (W.D. Pa. Mar. 30, 2007) ............................... 8

*Public Citizen v. U.S. Dept. of Justice,*
   491 U.S. 440 (1989) .................................................................. 13

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.,*
   792 F.2d 210 (D.C. Cir. 1986) ................................................... 17

*Rumsfeld v. Forum for Academic & Institutional Rights (FAIR), Inc.,*
   547 U.S. 47 (2006) .................................................................... 12

*SD3, LLC v. Black & Decker (U.S.) Inc.,*
   801 F.3d 412 (4th Cir. 2015) ..................................................... 14

*Serfecz v. Jewel Food Stores,*
   67 F.3d 591 (7th Cir. 1995) ......................................................... 7

*Shelley v. Kraemer,*
   334 U.S. 1 (1948) ............................................................... 19, 22

*Sheppard v. Lee,*
   929 F.2d 496 (9th Cir. 1991) ...................................................... 9

*State Nat'l Bank of Big Spring v. Lew,*
   795 F.3d 48 (D.C. Cir. 2015) ...................................................... 6

*Terry v. Adams,*
   345 U.S. 469 (1953) (1953) ............................................ 19, 20, 21

## **Federal Statutes**

15 U.S.C. §§1, 2 ....................................................... 2, 9, 14, 16

52 U.S.C. §§ 30101-30146 ............................................................................................ 13

**Federal Regulations**

11 C.F.R. § 110.13(c) ...................................................................................................... 15

Corporate and Labor Organization Activity,
  60 Fed. Reg. 64, 262 (Dec. 14, 1995) ...................................................................... 18

**Other Authorities**

*2012 Presidential Form 2 Filers*, FEDERAL ELECTION COMMISSION,
  http://www.fec.gov/press/resources/2012presidential_form2pty.shtml ................................... 14

Candidate Selection Criteria,
  http://www.debates.org/index.php?pagcandidatee=-selection-process ..................................... 14

## INTRODUCTION

Plaintiffs have filed what is, at bottom, a political lawsuit.  In response, the Commission on Presidential Debates ("CPD"), Frank J. Fahrenkopf, Jr., and Michael D. McCurry (collectively, "CPD" or "CPD Defendants") filed a straightforward Motion to Dismiss demonstrating that Plaintiffs' claims are legally deficient in several respects:

- Plaintiffs cannot establish Article III standing both because their alleged injuries are overly speculative and because they are the result of the actions of a number of intervening actors.

- Plaintiffs have not alleged they suffered any antitrust injury sufficient to confer antitrust standing.  The Complaint only alleges individual harm to Plaintiffs' campaigns and political aspirations and does not identify harm to any decipherable markets.

- Plaintiffs' Complaint does not state a claim under the Sherman Act for multiple reasons.  Most plainly, the Sherman Act regulates commerce and Plaintiffs challenge political, rather than commercial, conduct.  Plaintiffs' conspiracy theory ignores obvious alternative explanations for the conduct they challenge and applying the antitrust laws to this dispute would raise serious constitutional questions.

- Neither the CPD nor any of the other Defendants are state actors.  Thus, Plaintiffs' First Amendment claim fails as a matter of law because the First Amendment only restricts government action.

- Plaintiffs do not state a claim for intentional interference with prospective economic advantage under D.C. law because the Complaint fails to identify

the specific business relationships or expectancies with which Defendants allegedly interfered.

In their Consolidated Opposition to Defendants' Motions to Dismiss ("Opposition"), Plaintiffs fail to address meaningfully any of these fatal flaws. Plaintiffs continue to ignore controlling authority establishing that a candidate's alleged injury, in the form of a loss of media exposure, is overly speculative and insufficient to establish Article III standing. *Fulani v. Brady*, 729 F. Supp. 158, 164 (D.D.C. 1990), *aff'd* 935 F.2d 1234 (D.C. Cir. 1991). Instead, Plaintiffs mistakenly rely on competitor standing—a doctrine, not implicated here, that confers standing only "when the g*overnment* takes a step that benefits [the plaintiff's] rival and therefore injures [the plaintiff] economically." *Delta Const. Co., Inc. v. E.P.A.*, 783 F.3d 1291, 1299 (D.C. Cir. 2015) (emphasis added). Clearly, this case does not involve government action.

As to antitrust injury, Plaintiffs continue to focus entirely on their individual political opportunities and do not even attempt to identify any allegations in their Complaint that confer antitrust standing. The Opposition does assert new allegations of injury in the form of reduced "voter education output." *See, e.g.,* Pls.' Opp. 2. Even if considered, an alleged reduction in voter education is far too amorphous to constitute any cognizable market-based injury.

Plaintiffs likewise fail to overcome the most basic of defects in their antitrust claim: their grievance is political, yet the Sherman Act applies only to the "restraint of trade or commerce." 15 U.S.C. §§1, 2. Indeed, Plaintiffs invoke phrases such as "the business of campaigning for the presidency," Pls.' Opp. 2, but elsewhere they reveal that their so-called "business objectives" are actually political. They state: "Business objectives include both winning the election and influencing the national political agenda by demonstrating public support short of an Electoral College majority." Pls.' Opp. 12. Simply characterizing electoral success as a "business

objective" does not warrant the improper (and likely unconstitutional) expansion of the Sherman Act into the political arena.

Furthermore, while Plaintiffs have abandoned their allegations of per se liability, their Opposition attempts to re-cast their antitrust claims under the rule of reason, the elements for which were never pled in the Complaint.  Pls.' Opp. 45.  They rely heavily on a Memorandum of Understanding ("MOU") between candidates President Obama and Governor Romney, notwithstanding the fact that the CPD Defendants are not parties to that MOU (nor are the DNC or RNC), *see* Compl., Ex. 1 at 21, and that an agreement between two parties cannot form the basis of a conspiracy among all Defendants.

In any event, under either theory Plaintiffs' antitrust claims fail for multiple reasons, as addressed in the Reply brief of Defendants Democratic National Committee and President Obama, which the CPD Defendants adopt.  Reply in Supp. of DNC & Obama's Mot. to Dismiss ("DNC Reply"), ECF No. 47.  At bottom, to the extent Plaintiffs' attack is premised on the proposition that the CPD's candidate selection criteria reduce political discourse and competition, the Supreme Court has recognized that precluding debate sponsors from limiting debate participation to viable candidates would "not promote speech but repress it."  *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 681-82 (1998).  The CPD's fifteen percent standard itself has been approved repeatedly by the Federal Election Commission (FEC) and the courts, *see, e.g.*, *Buchanan v. Fed. Election Comm'n*, 112 F. Supp. 2d 58, 75 (D.D.C. 2000), and is identical to the standard used by the League of Women Voters ("LWV") before the CPD was even formed, *see* CPD Req. for Jud. Not., Ex. A at 7 of 65, ECF No. 41-1.

Plaintiffs' Opposition does not salvage their First Amendment claim.  To the contrary, Plaintiffs' concession that the Defendants are not state actors forecloses it.  Pls.' Opp. 48.  They

attempt to keep their First Amendment claim alive by relying on a limited line of cases that extend constitutional restrictions to private parties engaged in functions traditionally and exclusively performed by the government.  But this narrow doctrine leads Plaintiffs nowhere as the sponsorship of presidential debates is not a traditional governmental function and Plaintiffs do not contend otherwise.

Finally, Plaintiffs' Opposition merely restates their generic allegations of intentional interference with prospective economic advantage.  Plaintiffs make no attempt to address any of the relevant authorities or the arguments raised in Defendants' motions to dismiss, and have forfeited this argument as well.

At bottom, Plaintiffs clearly would prefer that the CPD adopt candidate selection criteria that would advance their political interests, but have not identified a legal right to demand such relief.   Their desire that the CPD adopt an alternate approach to candidate selection criteria does not state a viable claim under the Sherman Act, the First Amendment or D.C. tort law, and their Complaint should be dismissed.

## ARGUMENT

**I.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE ARTICLE III OR ANTITRUST STANDING.**

   **a.  No Article III Standing:  Plaintiffs have not identified any allegations that establish an injury-in-fact that is non-speculative and traceable to the CPD.**

The CPD's Motion to Dismiss ("Motion") highlighted this court's (Judge Revercomb) sound rejection of the speculative injuries asserted by a presidential election candidate, Lenora Fulani, who challenged her exclusion from the 1988 presidential debates.  CPD Defs.' Mem. in Supp. of Mot. to Dismiss ("CPD Mot.") 16, ECF No. 40.  Plaintiffs' Opposition has reaffirmed that they allege essentially the same injury that Fulani did: the loss of advertising (in this case, allegedly worth up to a billion dollars) and branding value, Pls.' Opp. 40, but they fail to provide

any factual allegations that would make their alleged injuries any less speculative than Fulani's, or any more traceable to the CPD.

The Opposition's attempt to distinguish *Fulani* misconstrues the district court and the D.C. Circuit rulings.  Both courts identified intervening factors that prevented Fulani from attaining the media exposure that she sought, and those factors affected the injury and traceability prongs of the standing analysis.  As this court explained in *Fulani*, a candidate's loss of exposure, as an injury, is overly speculative because any publicity resulting from the presidential debates depends on the actions of a number of third parties who are not under the court's control.  729 F. Supp. at 164.  Although the D.C. Circuit affirmed on separate grounds, the court recognized that "an injury will not be fairly traceable to the defendant's challenged conduct . . . where the injury depends not only on that conduct, but on independent intervening or additional causal factors."  *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991).  Plaintiffs' argument that *Fulani* did not involve any antitrust claims or "concerted activity" is irrelevant to the court's injury and traceability analysis.  The question at issue here, as it was in *Fulani*, is whether the Plaintiffs suffered an injury that is concrete and particularized, and actual or imminent, and not conjectural or hypothetical; and whether that injury is traceable to the Defendants' conduct.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).  Plaintiffs allege the same injury that Fulani did, which the court found to be overly speculative; their allegations should meet the same result.

Plaintiffs also appear to believe that the competitor standing doctrine gives them carte blanche to sue their competitors.  Even putting aside the fact that the CPD (a debate sponsor) does not compete with Plaintiffs (political candidates and their committees), Plaintiffs' argument misapplies a straightforward doctrine.  The competitor standing doctrine confers standing in

certain circumstances "when the *Government* takes a step that benefits [the plaintiff's] rival and therefore injures him economically." *Delta Const. Co.*, 783 F.3d at 1299 (emphasis added); *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 55 (D.C. Cir. 2015) ("Under that doctrine, a plaintiff in some circumstances may challenge the Government's allegedly illegal under-regulation of the plaintiff's competitor.")  Ironically, the "basic requirement common to [the competitor standing cases] is that the complainant show an actual or imminent *increase in competition . . .*" as a result of government action. *Am. Inst. of Certified Public Accountants v. I.R.S.*, 804 F.3d 1193, 1197 (D.C. Cir. 2015) (emphasis added).  That explains why the only cases Plaintiffs cite in support of this doctrine involve actions against the FEC—a government agency.  The Complaint does not challenge any government action, thus the competitive standing doctrine cannot cure their failure to allege a single non-speculative injury or to otherwise establish Article III standing.

> **b. No Antitrust Standing: Plaintiffs have not alleged any antitrust injury because their allegations focus solely on individualized injuries to their campaigns, but fail to identify any market-based harm.**

Compounding Plaintiffs' failure to establish Article III standing is the absence of any antitrust injury.  As the CPD noted in its Motion, Plaintiffs, at a minimum, must allege at the pleading stage that they suffered an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant[s'] acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  The CPD's Motion further explained that the Complaint fails to plead any antitrust injury because: (1) it alleges only individual harm to Johnson's and Stein's campaigns but does not identify any market-based harm; and (2) their alleged harm does not flow from anything forbidden by the antitrust laws because the criteria itself is lawful, and Plaintiffs would have suffered the same injury had any other debate sponsor adopted the fifteen percent standard, as LWV did before the CPD's formation.  CPD Mot. 19-21.

Plaintiffs' Opposition follows the same pattern as the Complaint, relying largely on claimed injuries to Johnson's and Stein's individual campaigns, and acknowledging that they seek damages to remedy their alleged loss of advertising and branding value. *See, e.g.,* Pls.' Opp. 40, 42. These are not antitrust injuries. *See Phillips Getschow Co. v. Green Bay Brown Cnty. Prof'l Football Stadium Dist.*, 270 F. Sup. 2d 1043, 1048 (E.D. Wisc. 2003) ("If the plaintiff simply wants the transfer of benefits that a defendant is reaping in the market, without discernable benefits to customers, it is likely that no antitrust injury exists.") Plaintiffs also make passing reference to the "presidential debates market," and list payments allegedly made by the Universities and municipalities hosting the debates as examples of commerce. Pls.' Opp. 19. But none of the Plaintiffs are involved in hosting or sponsoring debates, nor have they alleged any injury that would flow from any anticompetitive conduct in this contrived "market." *See Serfecz v. Jewel Food Stores*, 67 F.3d 591, 597 (7th Cir. 1995) (holding that supplier of grocery retail rental space was neither a competitor nor a consumer in grocery retail market and lacked antitrust standing to challenge a grocer's allegedly anticompetitive activities that prevented new tenants from occupying the space); *see also Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983) ("[T]he Sherman Act was enacted to assure customers the benefits of price competition, and our prior cases have emphasized the central interest in protecting economic freedom of participants in the relevant market.") Plaintiffs have yet to identify any injury sufficient to sustain antitrust standing.

The Opposition does include new, sweeping allegations of "reduced voter education output" that do not appear in the Complaint. *See, e.g.,* Pls.' Opp. 41. Putting aside Plaintiffs' improper attempt to supplement their allegations through their Opposition brief, the amorphous phrase "voter education output" could refer to just about anything with some tangential

relationship to an election.  *See e.g., Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1347 (11th Cir. 2009) (referring to the distribution of letters to voters, radio and television announcements, and public service announcements as voter education); *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, No. 02:06cv1064, 2007 WL 1007968 (W.D. Pa. Mar. 30, 2007) (referring to advertisements on buses as voter education).  It is entirely unclear what category of products or speech would fall under the umbrella of "voter education output" and Plaintiffs' vague references to this phrase do not identify any market-based injury. *See, e.g., DataCell ehf v. Visa, Inc.*, No. 1:14-cv-1658, 2015 WL 4624714, at *7 (E.D. Va. July 30, 2015) ("If the products in DataCell's markets are ideas, then the antitrust laws cannot help . . . Congress created antitrust laws to protect free market competition, not to protect the free exchange of ideas."); *Drake v. Cox Commc'n*, No. 10-2671-JTM, 2011 WL 2680688, at *3 (D. Kan. July 8, 2011) (holding that the "'national market' for PSAs [public service announcements]" was fatally overbroad because the complaint did not allege that the defendants control the national market for PSAs or that cable television was the only vehicle for dissemination of PSAs).

Thus, for the reasons stated in the CPD's Motion, and for the additional reasons stated in section II.C. of the DNC and President Obama's Reply, Plaintiffs have not alleged any antitrust injury, and, as a result, have failed to demonstrate antitrust standing.

## II.   PLAINTIFFS' OPPOSITION DISREGARDS THE PLAIN LANGUAGE OF THE SHERMAN ACT AND WELL-SETTLED LAW WHICH ESTABLISHES THAT FEDERAL ANTITRUST LAWS DO NOT REGULATE POLITICAL ACTIVITY.

The CPD's Motion relies on well-settled precedent that rejects and precludes application of antitrust laws in the political arena.  *See E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 141 (1961) (holding that the Sherman Act is "not at all appropriate

for application in the political arena.")   The Supreme Court further stated that "a publicity campaign to influence governmental action falls clearly into the category of political activity" and is outside the scope of the Sherman Act.   *Id.* at 140-41.   There is no dispute that the objectives of a presidential election campaign are, as Plaintiffs state, to win the presidency and "attract sufficient votes to exert a material influence on national public policy." Pls.' Opp. 12, 18. Of course, televised candidate debates occur in connection with presidential election campaigns, which places Plaintiffs' purported antitrust claims squarely within the category of political activity referenced in *Noerr*.   *See also Sheppard v. Lee*, 929 F.2d 496, 500 (9th Cir. 1991) ("[T]he antitrust laws pose no barriers to the suppression of competition for the holding of any particular office or position, elected or otherwise."); *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220, 231 (7th Cir. 1975) (holding that giving or accepting campaign contributions was not covered by the Sherman Act).

Plaintiffs' remaining arguments for extending the federal antitrust laws to presidential debates are equally meritless.  Without citing a single case applying the Sherman Act to political campaigns, Plaintiffs' Opposition argues that the Supreme Court repudiated a wholesale political activity exemption in *Federal Trade Commission v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) ("SCTL") and *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1998).  This argument is meritless for multiple reasons.  As an initial matter, the CPD's Motion was not predicated on any "exemption for political activities." It relied on the plain language of the Sherman Act which only regulates restraints on "trade or commerce."  *See* 15 U.S.C. §§ 1, 2. The Supreme Court's clear statement in *Noerr* confirms that regulating political activity, rather than business activity, "would have no basis whatever in the legislative history of that Act."  365

U.S. at 136.  The activity that Plaintiffs seek to regulate is inherently political, not commercial, and is therefore outside the scope of the antitrust laws.

Next, while Plaintiffs discuss *SCTL* and *Allied Tube,* neither case refutes any of the CPD's arguments regarding the reach of the Sherman Act.  In *Allied Tube*, the Supreme Court held that a steel conduit producer's manipulation of a private association's standard-setting process was not immune from antitrust liability under the *Noerr* doctrine.  486 U.S. at 506. Aside from the rather obvious point that the case clearly involved commerce, the Court in *Allied Tub*e made clear that a "restraint cannot form the basis for antitrust liability if it is 'incidental' to a valid effort to influence government action." *Id*. at 499.  It is beyond reasonable dispute that at least one of the purposes of running for President of the United States is to influence government action.  *See* Pls.' Opp. 12, 18.

Likewise, *SCTL* did not involve any political activity of the sort addressed in *Noerr* or at issue here.  In *SCTL*, a group of lawyers that served as court-appointed counsel for defendants in criminal cases agreed not to accept any new cases until the District of Columbia granted them an increase in hourly rates.  493 U.S. at 415.  The Supreme Court recognized that "[t]he agreement among the [court appointed] lawyers was designed to obtain higher prices for their services and was implemented by a concerted refusal to serve . . . the only customer in the market" for their services.  *Id*. at 423.  The Court further noted that "the undenied objective of [the defendants'] boycott was an economic advantage for those who agreed to participate."  493 U.S. at 426. Thus, any ensuing political activity or government action was merely incidental to the court-appointed lawyers' primary objective of obtaining higher rates, and a consequence of the fact that the government, which happened to be the lawyers' only customer, was also a market participant.  *See id*. at 425.

Debates, on the other hand, involve candidates seeking political office.  Even if Plaintiffs had identified some decipherable market in which competition in "trade or commerce" had been restricted, any effect on the market would be incidental to the primary purpose of a presidential election campaign, which, as Plaintiffs stated, is to win the presidency and influence national public policy.  Pls.' Opp. 12, 18; *see also Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Schs., Inc.*, 432 F.2d 650, 654 (D.C. Cir. 1970) ("[I]ncidental restraint of trade, absent an intent or purpose to affect the commercial aspects of the profession, is not sufficient to warrant application of the antitrust laws.")  As Plaintiffs acknowledge, participating in debates is an activity that occurs as part of a political campaign and falls squarely within the category of political activity that cannot be regulated by antitrust laws.  *Allied Tube*, 486 U.S. at 499; *Noerr*, 365 U.S. at 136.[1]

## III. PLAINTIFFS' ATTEMPT TO HAVE THIS COURT DICTATE CANDIDATE SELECTION CRITERIA FOR PRESIDENTIAL DEBATES WOULD RESTRICT POLITICAL SPEECH AND TRAMPLE THE CPD'S FIRST AMENDMENT RIGHTS.

As the CPD explained in its Motion, Plaintiffs' attempt to expand the antitrust laws to the presidential debate context threatens the CPD's First Amendment right to sponsor debates and invite candidates that best advance its voter education purpose.  The Supreme Court and the D.C. Circuit have recognized that the sponsorship of candidate debates and the selection of participants is expressive conduct.  *See Forbes* 523 U.S. at 674 (1998) (noting, in the candidate debate context, that a public broadcaster's compilation of the speech of third parties constitute communicative acts); *Perot v. Fed. Election Comm'n*, 97 F.3d 553, 559 (D.C. Cir. 1996) ("[I]f this court were to enjoin the CPD from staging the debates or from choosing debate participants,

---

[1] Plaintiffs suggest that the Court should be wary of precedents that pre-date *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), but fail to explain how that decision affects any of the issues addressed in their Complaint or in Defendants' motions to dismiss.  Pls.' Opp. 5.  *Citizens United* did not overrule or call into question any of the cases upon which Defendants rely, and cannot rehabilitate Plaintiffs' legally flawed claims.

there would be a substantial argument that the court would itself violate the CPD's First Amendment rights.")

The CPD further explained that Plaintiffs' expansive interpretation of the Sherman Act is in direct conflict with Supreme Court decisions that limit such restrictions on political speech to those that target "quid pro quo corruption or its appearance." *See, e.g., McCutcheon v. Fed. Election Comm'n*, 134 S.Ct. 1434, 1441 (2014). Plaintiffs' Opposition offers no response to this inherent conflict and instead recites excerpts from several inapposite cases that have nothing to do with political speech. Plaintiffs rely heavily on *Associated Press v. U.S.*, a case in which the Supreme Court applied the Sherman Act to the Associated Press ("AP"), a cooperative association whose members were engaged in the *for-profit business* of buying and selling news and enacted bylaws to block membership and sales to non-member competitors. 326 U.S. 1, 4 (1945). The Court held that the freedom of the press, guaranteed by the First Amendment, did not immunize AP's attempt to restrain the sale of news. *See id*. at 20. The difference here is that Plaintiffs' lawsuit seeks to regulate the CPD's speech itself, as opposed to any specific restriction on the purchase or sale of speech.

For the same reason, Plaintiffs' reliance on *Rumsfeld v. Forum for Academic & Institutional Rights (FAIR), Inc.* is off base. 547 U.S. 47 (2006). In that case, the Supreme Court held that allowing the military to recruit on law school campuses did not affect the schools' speech because "schools are not speaking when they host interviews and recruiting receptions," and "a law school's decision to allow recruiters on campus is not inherently expressive." *Id*. at 64.

The conduct Plaintiffs herein seek to regulate is very different. The decisions whether to debate, with whom to debate, and what candidate selection criteria best advance the CPD's voter

education purpose are all forms of speech or expression protected by the First Amendment.  *See,
e.g., Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 575 (1995)
(holding that the choice not to include a group in a parade is protected by the First Amendment
and "presumed to lie beyond the government's power to control.")  These are the same decisions
that Plaintiffs have challenged under the federal antitrust laws, despite the fact that Congress has
exercised extreme caution when legislating in the political arena, *Noerr*, 365 U.S. at 141, and has
enacted legislation that specifically regulates federal election campaign financing.  *See* Federal
Election Campaign Act, 52 U.S.C. §§ 30101-30146 ("FECA").[2]

Given the scope of federal election laws and FEC regulations that govern the sponsorship
of candidate debates, the notion that Congress would seek to regulate speech in the political
arena through legislation directed at restraints on trade or commerce is constitutionally suspect.
*Noerr*, 365 U.S. at 137-38.  Here, the cannon of constitutional avoidance and the plain language
of the Sherman Act, which regulates only commercial activity, require that Plaintiffs' antitrust
claims be dismissed.  *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 455 (1989)
(cautioning courts to interpret statutes to avoid deciding difficult constitutional questions). [3]

## IV.    PLAINTIFFS' ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE SHERMAN ACT.

### a.  Plaintiffs' conspiracy allegations are implausible and defy common sense.

The CPD's Motion explained that Plaintiffs' antitrust conspiracy theory is both
implausible and fails adequately to allege any actionable agreement between the CPD and any of

---

[2] Notably, Plaintiffs Libertarian National Committee and Green Party of the United States have filed a separate
lawsuit under the federal election laws challenging the FEC's recent affirmation of the legality of the CPD's
selection criteria.  *See* Compl., *Level the Playing Field v. Fed. Election Comm'n*, No. 1:15-cv-1397, ECF No. 1
(D.D.C.).

[3] Plaintiffs' Opposition also makes reference to cases involving ballot access rules, *Williams v. Rhodes* and
*Anderson v. Celebrezze*.  Any rights Plaintiffs may have to appear on a ballot are not affected in any way by their
participation in or exclusion from the presidential debates, evidenced by Plaintiffs' allegation that they appeared on
enough ballots during the 2012 presidential election to obtain a majority of the Electoral College votes.  Compl. ¶
82.  Moreover, as discussed in more detail, *see infra* section V, the D.C. Circuit has already rejected attempts to
equate debate participation to ballot access.  *See Johnson v. F.C.C.*, 829 F.2d 157, 164-65 (D.C. Cir. 1987).

the other Defendants.  CPD Mot. 26-27.  In response, Plaintiffs' Opposition makes clear that their allegations of concerted action turn on the MOU—an agreement solely between President Obama and Governor Romney.  Pls.' Opp. 38.  As explained in its Motion, the CPD was not a party to the agreement, CPD Mot. 28, n.15, and Plaintiffs do not allege otherwise.  Nor do they explain how an agreement between two individuals plausibly suggests a broad conspiracy among all remaining defendants.  *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (holding that a § 1 plaintiff "cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group" but instead must "make a factual showing that each defendant conspired in violation of the antitrust laws.")  For these reasons, and for the additional reasons stated in section II.D.2. of the DNC and President Obama's Reply, Plaintiffs' arguments based on the MOU are unavailing.

Moreover, to the extent Plaintiffs argue that the CPD's fifteen percent standard is the result of a decades-long conspiracy, they ignore the obvious alternative explanation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 567 (2007) (finding conspiracy allegations deficient where there is an "obvious alternative explanation" for the challenged conduct).  The stated goal of the CPD's debates is to afford the members of the public an opportunity to sharpen their views, in a focused debate format, of the leading candidates for President and Vice President of the United States.  *See* Candidate Selection Criteria, http://www.debates.org/index.php?pagcandidatee=-selection-process.  Scores of candidates run for president every election cycle, including dozens who do not seek the nomination of either major party.  *See 2012 Presidential Form 2 Filers*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/press/resources/2012presidential_form2pty.shtml (last visited May 3, 2016) (reporting over 240 declared candidates who were not identified as members of the Democratic or Republican party).  Candidates for federal office are

not required to debate, and history teaches that it is speculative at best to assume that the leading candidates would agree to share the stage with candidates enjoying only scant public support. *See Fulani*, 935 F.2d at 1329 (noting that major party candidates may decline to participate in "debates that do not present them as the two salient candidates . . . ."); *see also* Compl. ¶¶ 34, 50-51 (acknowledging instances where major-party candidates refused to debate candidates with relatively minimal public support).

Under these conditions, a presidential debate sponsor seeking to host debates that include the leading candidates faces a difficult task. The sponsor needs to be inclusive enough to a candidate, *regardless of party affiliation*, whose level of public support genuinely qualifies him or her as a leading candidate. At the same time, the sponsor should not take an approach so inclusive that invitations to candidates with scant public support deprive the public of the opportunity to see debates that include the candidates in whom they are most interested. In addition, under FEC regulations, the sponsor must base its decisions on criteria that are "pre-established and objective." *See* 11 C.F.R. § 110.13(c).

It is because of these well-known circumstances, not a far-fetched anti-competitive conspiracy, that the CPD adopted its fifteen percent standard. Undoubtedly based on these same factors, the non-partisan LWV had adopted the same standard years before the CPD was formed.[4] The thirty-year conspiracy that Plaintiffs allege would have required the complicity of

---

[4] Plaintiffs' Opposition tries to argue that there are material distinctions that differentiate the CPD's and LWV's fifteen percent polling criteria. But the supposed distinctions either do not exist or are plainly trivial. For example, Plaintiffs argue that the CPD's reliance on the average of five "publicly reported" results of "national" public opinion polls provides the distinction they seek. Pls.' Opp. 33. But as LWV explained in its FEC filings, which are part of the record before the Court, CPD Req. for Jud. Not., Ex. A at 58 of 65, LWV also relied on "nationwide public opinion polls."

One notable distinction that Plaintiffs fail to acknowledge is that LWV announced it would extend an automatic invitation to the nominees of the major political parties, even if those candidates did not meet the fifteen percent threshold. *Id.* at 57 of 65. The CPD's criteria applies equally to all candidates *regardless of party affiliation*. There are no automatic invitations. Thus, contrary to Plaintiffs' unsupported claims, the CPD's candidate selection criteria

many distinguished CPD board members, a succession of competing major party nominees, and leaders of the DNC and RNC. For what? A conspiracy to implement the same standard that had been adopted by the previous debate sponsor whom Plaintiffs trumpet as non-partisan? This is wholly implausible. The far more plausible explanation is simply that the CPD reached the same conclusion as LWV and other debate sponsors: Gauging public support, as measured by public opinion polls, is a reasonable criterion upon which to rely to narrow a large field of candidates to those who have a more than theoretical chance of being elected. Plaintiffs cannot state a claim by pressing an implausible, far-fetched theory, while ignoring the "obvious [and more likely] alternative explanation." *Twombly*, 550 U.S. 567-68.

> **b. Plaintiffs cannot state a claim under the rule of reason because the CPD's criteria are reasonable and necessary for the production of debates involving leading candidates.**

Although Plaintiffs' Complaint alleged a per se violation of § 1 of the Sherman Act, Compl. ¶¶ 1, 8, 10, Plaintiffs' Opposition seeks to abandon that theory in favor of the rule of reason, the elements of which were never pled in the Complaint. Pls.' Opp. 45. In addition to the reasons stated in section II.D. of the DNC and President Obama's Reply, Plaintiffs' Complaint fails to state a claim for relief under the rule of reason because the CPD's candidate selection criteria are essential in staging a meaningful presidential debate and identifying the leading candidates out of the hundreds who typically declare their candidacy for President of the United States.

The Supreme Court in *American Needle, Inc. v. National Football League* acknowledged that restraints on competition that are essential to ensure a product's availability are likely to survive a rule of reason analysis. 560 U.S. 183, 203; *see also Broad. Music, Inc. v. Columbia*

---

are actually *less* favorable to major party nominees than those of LWV, the organization Plaintiffs describe as "independent and non-partisan." Compl. ¶ 24.

*Broad. Sys., Inc.*, 441 U.S. 1, 23 (1979) ("Joint ventures and other cooperative arrangements are also not usually unlawful . . . where the agreement . . . is necessary to market the product at all."). Courts have observed that such agreements do not require a detailed analysis, thus the rule-of-reason can be applied "in the twinkling of an eye . . . at the motion-to-dismiss stage." *Agnew v. NCAA*, 683 F.3d 328, 341 (7th Cir. 2012); *see also McCormack v. NCAA*, 845 F.2d 1338, 1344 (5th Cir. 1988) (upholding dismissal of complaint challenging NCAA's eligibility rules under § 1 and recognizing that the challenged restrictions were reasonable).

Eliminating assessments of public support as a criterion very well could result in fewer, not more, debates. A debate sponsor forced to either invite candidates with relatively minimal public support or incur legal liability may elect to forego the debates altogether and pursue other means of implementing its voter education goals. *See Forbes*, 523 U.S. at 681. For the debate participants, the criteria are essential in curtailing a free-rider problem that looms when lesser-known candidates seek to use the CPD-sponsored debates—along with the interest generated by more popular candidates—to launch their campaigns. As noted, leading candidates have little incentive to share the stage with those who enjoy marginal support; and, if history is any guide, the absence of a meaningful threshold of public support would jeopardize the CPD's ability to ensure the participation of the leading candidates in whom the public has shown the most interest. *See, e.g.,* Compl. ¶¶ 34, 50-51; *see also Fulani*, 935 F.2d at 1329. As the D.C. Circuit and other federal courts have held, the reasonableness of criteria that curtail free rider problems—and ensure the viability of a debate among leading candidates—is clear and can be determined as a matter of law. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 214 (D.C. Cir. 1986) (finding reasonableness of restraint "clear" where it resolved a free-rider problem); *K & R Leasing Corp. v. Gen. Motors Corp. Oldsmobile Div.*, 551 F. Supp. 842,

848 (N.D. Ill. 1982) (holding that some restraints enhance competition by preventing free-riding and "[i]t is not sufficient under the Rule of Reason to identify a . . . restraint and to allege, without more, that it excludes . . . competition . . . .")

Moreover, the Federal Election Commission—the agency that most directly regulates the conduct of presidential debates—has stated that a debate sponsor's candidate selection criteria are also subject to an implied "reasonableness" requirement.   *See* Corporate and Labor Organization Activity, 60 Fed. Reg. 64, 262 (Dec. 14, 1995), *available at* 1995 WL 735941.   Yet that same agency has dismissed every single challenge to the CPD's criteria since they were adopted in 2000 (including the most recent challenge filed by Plaintiffs Libertarian National Committee and Green Party of the United States) after finding no reason to believe that the CPD violated any election laws or regulations.[5]   The FEC has also rejected repeatedly the argument that the fifteen percent standard was adopted to limit participation to the two major party candidates. *See, e.g.,* MUR 4987, at 15.[6]

The reasonableness of the CPD's selection criteria has been reaffirmed time and again. *See, e.g.*, *Buchanan*, 112 F. Supp. 2d at 75 ("It is difficult to understand why it would be unreasonable or subjective to consider the extent of a candidate's electoral support prior to the debate . . . .")   By eliminating the prospect of cacophony and reducing the risk that leading

---

[5] *See, e.g.,* Level the Playing Field, First Gen. Counsel's Report, MUR 6869 (2015), *available at* http://eqs.fec.gov/eqsdocsMUR/15044375502.pdf.; Sims, First Gen. Counsel's Report, MUR 5530 (2005), *available at* http://eqs.fec.gov/eqsdocsMUR/000043F0.pdf; Farah, First Gen. Counsel's Report, MUR 5414 (2004), *available at* http://eqs.fec.gov/eqsdocsMUR/00002D01.pdf; Hagelin, First Gen. Counsel's Report, MUR 5378 (2004), *available at* http://eqs.fec.gov/eqsdocsMUR/000012D0.pdf, *aff'd, Hagelin v. Fed. Election Comm'n*, 411 F.3d 237 (D.C. Cir. 2005); Englerius, First Gen. Counsel's Report, MUR 5207 (2002), *available at* http://eqs.fec.gov/eqsdocsMUR/000000AF.pdf; Reform Party of U.S.A., First Gen. Counsel's Report, MUR 4987 (2000), *available at* http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf, *aff'd, Buchanan*, 112 F. Supp. 2d 58.

[6] Notably, despite Plaintiffs' overblown claims about the impossibility of meeting the polling threshold as a non-major party candidate, Plaintiff Gary Johnson very recently expressed confidence that he will reach the 15 percent mark in time to qualify for the 2016 debates. *See* Andy Lyman, *Gary Johnson in Nationally Televised Debate*, NM Political Report, Mar. 31, 2016, *available at* http://nmpoliticalreport.com/37959/gary-johnson-in-nationally-televised-debate/.

candidates—in whom the public has the greatest interest—will refuse to participate (or "compete") altogether, the fifteen percent standard advances the CPD's educational goals while providing procompetitive benefits. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 114 (1984) (recognizing increased output as a procompetitive justification).[7] The rule of reason, thus, requires that Plaintiffs' antitrust claims be dismissed.

## V.   THE FIRST AMENDMENT DOES NOT RESTRICT THE DEFENDANTS' CONDUCT.

The CPD moved to dismiss Plaintiffs' First Amendment claim on the grounds that the Defendants are not state actors, and it is well-settled that the First Amendment does not restrict the conduct of private parties. Although Plaintiffs concede both points, Pls.' Opp. 48, they argue that the Court should impose First Amendment restrictions on defendants anyway, and rely on three cases, *Marsh v. Alabama*, *Terry v. Adams*, and *Shelley v. Kraemer* in which the Supreme Court imposed constitutional restraints on private parties.

Plaintiffs' reliance on *Marsh* and *Terry* is inapt because each involved private parties that were performing functions traditionally and exclusively reserved to the state—a narrow, rarely-invoked exception to the state-action requirement that is clearly inapplicable here. *See, e.g., Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158-59 (1978) (refusing to apply the public function doctrine to private actors and finding no deprivation of any constitutional right based on the sale of plaintiffs' property because "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function."); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974) (noting that the Court has found state action "in the exercise by a private entity of powers traditionally exclusively reserved to the State.") (*citing Terry* and *Marsh*).

---

[7] *See* CPD Mot. 1-2 n.8 for a discussion of the impracticality of using every ballot qualified candidate as the criteria.

In *Marsh*, the Supreme Court held that the First Amendment protected a Jehovah's Witness's right to distribute religious literature on the sidewalk of a company-owned town. 326 U.S. 501 (1946). The Court reasoned that the operation of some facilities, which are "built and operated primarily to benefit the public" are "essentially a public function . . . subject to state regulation." *See id*. at 506. And, in *Terry*, although the Court applied the Fifteenth Amendment to a primary election operated by a private organization, the Court found that the organization's primary "became . . . the only effective part[] of the elective process that determines who shall rule and govern the country." *Terry v. Adams*, 345 U.S. 469 (1953).

While conducting elections (*Terry*) and running towns (*Marsh*) are functions that have been traditionally and exclusively performed by the government, sponsoring a presidential debate is not. *See DeBauche v. Trani*, 191 F.3d 499, 509 (4th Cir. 1999) ("[H]osting debates could never be the exclusive prerogative of the government . . . .") The CPD has sponsored presidential debates since 1988, and in the three presidential elections before that, LWV, another private organization, sponsored the debates. Thus, unlike *Terry* and *Marsh*, Plaintiffs seek to impose constitutional restraints on a private party performing a function that was rarely, if ever, conducted by the government. These cases provide no basis to assert a First Amendment claim.[8]

---

[8] Plaintiffs suggest that they should be afforded an opportunity to conduct discovery on a purely legal question: whether Defendants are subject to the First Amendment's restrictions. Pls. Opp. 51. It's a poorly kept secret that one of Plaintiffs' motivations in filing this lawsuit is to employ the tools of formal discovery in an effort to locate material they might use for political purposes. *See, e.g.,* Independent Political Report, Gary Johnson on Why He's Suing the Commission on Presidential Debates, *available at* http://www.independentpoliticalreport.com/2015/10/video-gary-johnson-on-why-hes-suing-the-commission-on-presidential-debates/ (last visited, May 3, 2016). This is inappropriate. In any event, where, as here, Plaintiffs' claims are legally deficient, discovery cannot be used as a tool to search for a claim. *See Twombly*, 550 U.S. at 558 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . .") The areas in which Plaintiffs plan to seek discovery could involve the disclosure of sensitive political speech and strategy, none of which should be turned over lightly, and, at the very least, not without a legally viable claim. *Cf. Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 473-74 (2007) (noting that opening the doors to discovery can chill political speech). Additional discovery will not cure the legal flaws in Plaintiffs' claims, and their Complaint should be dismissed in its entirety.

Furthermore, to the extent Plaintiffs suggest that a presidential debate is equivalent to an election, they are flatly wrong.  As the CPD explained in its Motion, the D.C. Circuit foreclosed the same argument in *Johnson v. F.C.C.*, where the court held that petitioners who challenged their exclusion from presidential debates had not demonstrated that they were effectively excluded from the ballot in violation of their First Amendment rights.  829 F.2d 157, 165 (D.C. Cir. 1987).  There, too, the plaintiffs relied on *Terry v. Adams* and ballot access cases to support their First Amendment claim.  *See id.* at 164.  Nonetheless, the court stated: "[T]he exclusion of petitioners from the debates did not prevent them from waging an effective campaign or deny voters the opportunity to exercise their First Amendment rights by casting their votes for petitioners."  *Id.* at 165.

Because *Johnson* is controlling precedent that soundly rejects Plaintiffs' First Amendment theory, Plaintiffs' Opposition attempts to distinguish its holding based on the fact that *Johnson* involved broadcast media.  Pls.' Opp. 53-54.  Plaintiffs do not explain why this distinction is relevant to the analysis here.  Like the litigants in *Johnson*, Plaintiffs allege that exclusion from the debates violated their First Amendment rights, and the *Johnson* court considered this issue only after it had disposed of Plaintiffs' Communications Act and broadcast access-related claims.  *See id.* at 160.

Moreover, the court in *Johnson* noted that the petitioners' claims were functionally indistinguishable from those asserted in *Buckley v. Valeo*, 424 U.S. 1 (1976), a case which had nothing to do with broadcast media or the Communications Act.  In that case, the Supreme Court held that the denial of public financing was not restrictive of voters' or candidates' rights because it did not prevent candidates from getting on the ballot or voters from casting a vote for their candidate of choice.  *See id.* at 94-96; *Johnson*, 829 F.2d at 165.  The D.C. Circuit

obviously had no difficulty comparing the First Amendment analysis in *Buckley* to the Plaintiffs' claims in *Johnson*, even though *Buckley* did not involve broadcast media.  Nor should this court. Plaintiffs' First Amendment argument is functionally indistinguishable from the claim asserted in *Johnson*, and this court should reject Plaintiffs' attempts to avoid controlling precedent.

Finally, as the CPD stated in its Motion, Plaintiffs' reliance on *Shelley v. Kraemer*, a case in which the Supreme Court found that judicial enforcement of a racially restrictive covenant constituted state action, is misguided.  334 U.S. 1 (1948).  Unlike *Shelley*, no court has enforced the MOU upon which Plaintiffs so heavily rely, and Plaintiffs have not identified a single case in which the mere potential for judicial enforcement was sufficient to demonstrate state action.  *See, e.g., Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002) (holding that the threat of judicial enforcement of a deed restriction did not constitute state action).  In any event, the CPD's Motion cited decisions from numerous federal courts, including the Supreme Court, that cast doubt as to *Shelley's* applicability outside the narrow context of racial discrimination claims. CPD Mot. 28, n.16; *see also Loren*, 309 F.3d at 1303 (noting that "*Shelley* has not been extended beyond race discrimination.")  Plaintiffs neither address nor distinguish any of these cases. Therefore, based on Plaintiffs' concession that Defendants are not state actors, their First Amendment claims should be dismissed.  None of the cases they cite require a different result.

**VI.    PLAINTIFFS FAIL TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS THEIR INTENTIONAL INTERFERENCE CLAIM AND HAVE NOT IDENTIFIED ANY SPECIFIC BUSINESS OPPORTUNITIES TO SUPPORT THEIR CLAIM.**

The CPD's Motion made clear that asserting an intentional interference claim under D.C. tort law requires much more than general or speculative allegations of business expectancies. CPD Mot. at 31.  Rather, a plaintiff must identify specific business opportunities, like "specific book deals, specific sources of prospective employment, the development of specific property, the opportunity to represent a specific client, and so on."  *Guttenberg v. Emery*, 41 F. Supp. 3d

61, 73 (D.D.C. 2014).  Plaintiffs, however, continue to rely on generic allegations of unspecified opportunities, and speculative assumptions about the benefits that would flow from their participation in the CPD-sponsored presidential debate.  Their Opposition makes no attempt to respond to the CPD's arguments or to any of the authorities establishing that their claim was insufficiently pled.  Therefore, for the reasons set forth in the CPD's Motion, this court should dismiss Plaintiffs' intentional interference claim.

## CONCLUSION

For the foregoing reasons, Defendants CPD, Frank Fahrenkopf, and Michael McCurry respectfully request that this Court grant their Motion to Dismiss the Complaint with prejudice.

Dated: May 3, 2016                                     Respectfully Submitted,


By:/s/Lewis K. Loss
Lewis K. Loss, Bar No. 375793
LLoss@ljwllp.com
Uzoma Nkwonta, Bar No. 975323
UNkwonta@ljwllp.com
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C.  20005
Telephone:  202.778.4060
Facsimile:  202.778.4099

*Attorneys for Defendants*
*Commission on Presidential Debates, Frank J.*
*Fahrenkopf, Jr., and Michael D. McCurry*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2016, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Respectfully submitted,

/s/ Lewis K. Loss
Lewis K. Loss, Bar No. 375793
LLoss@ljwllp.com
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099